TUDRYCK *v.* MUTCH.

APPEAL OF SMYL.

1. JUDGMENT—CONSENT—VACATION.

A judgment by consent cannot ordinarily be set aside or vacated by the court without the consent of the parties thereto as it is not the judgment of the court but the judgment of the parties.

2. SAME—CONSENT.

Orders and decrees made by consent, and with full knowledge of the facts, are binding upon the parties consenting, and cannot be gainsaid so long as they remain in force.

3. ATTORNEY AND CLIENT—APPEARANCE—RATIFICATION.

An attorney-at-law is presumed to have authority to represent a party litigant for whom he appears and failure of litigant with knowledge of such appearance to deny such authority and repudiate such appearance promptly and unequivocally works ratification.

4. JUDGMENT—CONSENT—ATTORNEY AND CLIENT—COMPROMISE AND SETTLEMENT.

Denial of motion to set aside consent decree at the request of one of the parties thereto was proper where decree was entered into by such party's attorney who had been duly authorized to effect settlement embodied therein.

5. SAME—CONSENT—ADMISSION OF NONINTEREST.

Consent decree was not subject to being set aside on motion of some defendants merely because another defendant's cross bill had not been served on them where bill asserted complaining defendants had no interest in the subject matter of the litigation and they failed to appear and deny such allegations and decree was not outside the scope of the bill.

6. ACCOUNTING—AFFIRMATIVE RELIEF—CROSS BILL.

A cross bill is not a requisite to granting affirmative relief to a defendant in an accounting suit.

7. EQUITY—LACHES—COURT RULES—SETTING ASIDE DEFAULT—RE-
HEARING.

A defendant's attempt to assert an interest in land by motion
to set aside default decree some four years after he had tes-
tified in a case in which the plaintiff asserted sole ownership
in the land without defendant herein then claiming an interest
*held*, precluded by the doctrine of laches and provisions of
court rules requiring motion to set aside default decree to be
filed within four months and filing of application for rehearing
to be within two months (Court Rules Nos. 28, 48 [1933, as
amended]).

8. COMPROMISE AND SETTLEMENT—PARTIES—RECEIVERS.

A settlement of litigation *is not void merely because it was made*
with the original defendant temporary receiver's successor, the
permanent receiver, who was permitted to intervene, *nunc pro
tunc* (3 Comp. Laws 1929, § 14144).

9. PLEADING—AMENDMENT—JUDGMENT.

Courts may permit amendments to the pleadings or proceedings
after judgment (3 Comp. Laws 1929, § 14146).

10. APPEAL AND ERROR—QUESTIONS REVIEWABLE—COMPROMISE AND
SETTLEMENT—PARTIES—RECEIVERS.

While it is unnecessary to determine that a settlement agreement
was defective because made with the original defendant re-
ceiver's successor since the substantial rights of the parties
were not affected by such claimed defect, trial court's order
permitting permanent receiver to intervene as a party defend-
ant in place of predecessor, the temporary receiver, is ap-
proved (3 Comp. Laws 1929, §§ 14144, 14146).

11. RECEIVERS—OFFICERS OF COURT—INTERVENTION—PARTIES.

A decree granting relief to a permanent receiver who had been
permitted to intervene in place of his predecessor, the tem-
porary receiver, did not exceed the judicial power of the court
by giving relief to a stranger to the proceedings as they were
both officers of the court in which the cause was pending.

Appeal from Arenac; Shaffer (John C.), J. Sub-
mitted October 14, 1947. (Calendar No. 43,578.)
Decided January 6, 1948. Certiorari denied by
Supreme Court of the United States May 17, 1948.

Bill by Tony Tudryck and wife against J. O. Mutch
and others for an accounting and to determine own-
ership in land. Decree by consent. On separate

motions by defendant Smyl and wife and plaintiffs to vacate decree. Motions denied. Defendants Smyl appeal. Plaintiffs appeal. Affirmed.

*James F. Murray* and *Harry J. Lippman,* for plaintiffs.

*J. P. Mikesell,* for defendants Smyl.

*Yeo & Bilitzke,* for defendant receiver of Sterling Bank of Sleeper and Chamberlain.

BUSHNELL, C. J.    Leave to appeal, in the nature of mandamus, was granted to review orders of the circuit court of Arenac county, entered April 17, 1946, denying the motions of plaintiffs Tony Tudryck and Mary Tudryck, his wife, and defendants Andrew Smyl and Victoria Smyl, his wife, to set aside a certain decree and granting the motions of defendant Joseph Martin, receiver of Sterling Bank of Sleeper and Chamberlain, to dismiss the Tudryck and Smyl motions.

A record of 270 pages is presented, to which is added a separate volume of 264 pages of exhibits, and the respective parties have filed 10 separate briefs. Notwithstanding all this, relatively simple questions are involved, the principal ones being: (1) the effect of a settlement agreement between plaintiffs Tudryck and H. L. Switzer, then permanent receiver of the defendant bank; and (2) whether the decree entered as a result of such agreement is binding on defendants Smyl, they never having been served with the bank's cross bill.

Litigation involving some of the same parties and subject matter is presently pending in this Court in the case of *Tudryck* v. *Mutch, ante,* 86, decided herewith, and it is suggested in the briefs that the other litigation will shortly be before us in the case of Lipp-

man v. Martin, Receiver. It might be noted here that none of this litigation would have existed were it not for the discovery of oil on the lands involved therein.

Plaintiffs sought an accounting against defendants J. O. Mutch and Harvey A. Chamberlain, copartners doing business as the Sterling Bank of Sleeper and Chamberlain. Smyl and wife were joined as defendants, although no personal relief was sought against them. The ultimate object of the accounting suit was to secure a determination that plaintiffs were the fee owners of the property involved, and that it was free and clear of all liens and encumbrances.

Plaintiffs claim that they purchased 110 acres of land in the township of Deep River, Arenac county, Michigan, on May 24, 1920, and 60 additional acres on October 22, 1923. It is stated in the bill of complaint that on the latter date the Tudrycks and the Smyls, then joint owners, were jointly and severally indebted to the bank in the sum of $3,500, secured by a mortgage on this property; that further loans were subsequently granted, secured by a further mortgage; that on November 22, 1929, a deed to the premises was given to Mutch as cashier, reciting an indebtedness by the Tudrycks and the Smyls of $5,559. This deed was admittedly given as additional security in connection with an additional loan. The Tudrycks claim that they subsequently, with the full knowledge of Mutch, purchased from the Smyls all their right, title and interest in and to the lands, and have since occupied and farmed the property.

In 1930, with the bank's consent, they sold 30 acres, the proceeds of which were applied on their indebtedness to the bank. Later, other moneys were borrowed and other payments made, so that in 1934 the bank indebtedness was reduced to $3,000. At

this time a land contract covering 140 acres was is-
sued by Mutch, as cashier, to the Tudrycks, on which
interest was paid in 1935.

As a result of the transactions disclosed in the
case of *Tudryck* v. *Mutch,* the Tudrycks claim that
the bank received sums in excess of their indebted-
ness. They take the position that their indebted-
ness, having been discharged, the bank and others
are wrongfully in possession of the premises; and
that they, the plaintiffs, should be declared the
fee owners, free of any liens thereon. To these aver-
ments, defendants Mutch and Chamberlain replied,
and by cross bill sought foreclosure of the several
mortgages and sale of the property in satisfaction
thereof.

The record shows that defendants Smyl were de-
faulted for nonappearance after personal service,
and the opinion of the trial judge states:

"The charge that defendants Smyl were never
served with process was withdrawn in open court."

They were not, however, served with either a copy
of the bank's cross bill or a summons upon the filing
of such cross bill.

The original bill was filed on August 16, 1938, and
after several hearings a written stipulation was filed
on January 27, 1940. It was agreed by Tudryck
and his wife, by their attorney, Harry J. Lippman,
and H. L. Switzer, then permanent receiver and suc-
cessor to defendant Joseph Martin, the temporary
receiver, by his attorney, that $300 be paid the
Tudrycks in consideration of which they would con-
vey to the receiver all their right, title and interest
to the lands, including the equity of redemption
from mortgages and land contracts referred to in
the pleadings, together with all mineral rights and
any interest in oil and gas leases. The receiver,
upon payment of this sum, should become the owner

in fee simple of the property in question and all indebtedness to the bank would be cancelled. (We here note that on December 13, 1938, H. L. Switzer was appointed by the court as permanent receiver of the bank, and that on September 15, 1942, the court accepted his resignation and appointed Joseph Martin as his successor. Martin had been for a time the temporary receiver of the bank).

A decree in proper form and ample in substance was filed in the cause contemporaneously with the stipulation. Later, an affidavit of service of notice of entry of the decree served on plaintiffs' attorney was filed on February 18, 1940, together with a receipt of Lippman for the $300. The Smyl motion to vacate this decree was filed almost four years later, on August 16, 1944, to which was attached an affidavit by Andrew Smyl and another by his wife, in which numerous questions were raised, including their claim of ownership. A like motion was filed by the Tudrycks on October 31, 1944. Martin, as successor receiver, filed motions to dismiss those of Smyl and Tudryck, together with counter affidavits.

Upon the issues thus framed, the matter came on to be heard on December 12, 1944, when the court received certain documentary evidence and heard the parties. At a later hearing it developed that part of the attack upon the decree was based upon the fact that the settlement was made with Switzer when, although he was the permanent receiver, he had not been substituted for Martin, who filed the answer and cross bill in his capacity as temporary receiver.

The decree which was entered as the result of the stipulation to which the Tudrycks were parties by their attorney is, in essence and effect, a consent decree.

"A judgment by consent cannot ordinarily be set aside or vacated by the court without the consent of the parties thereto   *   *   *   for the reason it is not the judgment of the court but the judgment of the parties." *In re Estate of Meredith,* 275 Mich. 278, 289 (104 A. L. R. 348).

This view follows the rule promulgated in the headnote in *Russell* v. *White,* 63 Mich. 409, which reads:

"Orders and decrees made by consent, and with full knowledge of the facts, are binding upon the parties consenting, and cannot be gainsaid so long as they remain in force."

The record clearly shows that Lippman was authorized to enter into the stipulation, and that Tudryck indorsed the receiver's check for $300, the consideration named in the settlement agreement. He and his wife executed and acknowledged a quitclaim deed in consummation thereof. The Tudrycks were present in court during the taking of testimony and at the conference which led to the settlement agreement. They do not claim that they were either ignorant of or mistaken as to the facts. Several months later, Mary Tudryck gave her husband, Tony, an assignment of all her interest in the properties and in which she recited that they were those "which my said husband and myself did own prior to January 25, A.D. 1940." This assignment was given so that her husband could prosecute in his own name his action for damages against Mutch in the case of *Tudryck* v. *Mutch.*

The applicable rule is thus summed up in the headnote of *August* v. *Collins,* 265 Mich. 389:

"An attorney-at-law is presumed to have authority to represent a party litigant for whom he ap-

pears and failure of litigant with knowledge of such appearance to deny such authority and repudiate such appearance promptly and unequivocally works ratification.''

To argue at this late date that the Tudrycks did not authorize the settlement or that their attorney exceeded his authority is, to say the least, not appealing to the conscience of the Court.

Smyl's argument that the decree should be set aside because neither he nor his wife was served with the cross bill filed by the bank is beside the point. Had this cross bill never been filed, the situation would be the same so far as, the Smyls are concerned. When they were served in the action brought by the Tudrycks against the bank, they were charged then and there with notice that it was asserted that they had no interest in the subject-matter of the litigation. The situation is unlike that presented in *Huebner* v. *Winskowski,* 246 Mich. 77, where one seeking to enforce a mechanic's lien filed a cross bill and failed to serve those having an interest in the property.

By their failure to appear and deny the allegations of the original bill, the Smyls admitted all the well pleaded averments thereof. One of these admissions was that they had no further interest in the subject-matter of the litigation and that the accounting between the Tudrycks and the bank and others was none of their concern. We find nothing in the decree outside the scope of the bill of complaint; nor is a cross bill requisite to granting affirmative relief to a defendant in an accounting suit. *Long* v. *Earle,* 277 Mich. 505, 527; and see 1 Am. Jur. p. 307, § 63, therein quoted.

In the case of *Tudryck* v. *Mutch,* wherein Tudryck asserted sole ownership of the properties and the right to recover for damages caused by Mutch, Smyl testified at considerable length, without the slightest

intimation, that he had any interest therein. His belated attempt, four years later, to assert such an interest must be precluded by the doctrine of laches and the provisions of Court Rules Nos. 28 and 48 (1933, as amended).

We are not impressed with the contention that the settlement is void because it was made with the original defendant receiver's successor, who was permitted to intervene, *nunc pro tunc.* Nor can it be said that if this was a defect it could not be cured.

The Court said in *Daly* v. *Wayne Circuit Judge,* 102 Mich. 392, 394:

"It was a proper exercise of the court's discretion to permit the amendment of the verification and the filing of a replication after decree. Had the questions arisen upon the hearing, the power to do so would probably not have been questioned; but the questions were not raised then, and, when they were raised, were no more meritorious than they would have been upon the hearing. There is no legal impediment, for courts may permit amendments to the pleadings or proceedings after judgment." *

It is unnecessary to determine that the settlement agreement was defective, because it is obvious that "the substantial rights of the parties" were not affected by the claimed defect. 3 Comp. Laws 1929, § 14144 (Stat. Ann. § 27.838). We approve, nevertheless, of the *nunc pro tunc* order entered as of the date of the trial judge's opinion. This order allowed the permanent receiver, Switzer, to intervene as a party defendant in the place of his predecessor, the temporary receiver, Martin.

Both appellants have suggested that State and Federal constitutional questions are involved, arguing that the decree exceeds the judicial power of the court in purporting to give relief to a permanent

---

* See 3 Comp. Laws 1929, § 14146 (Stat. Ann. § 27.840).—RE-PORTER.

receiver who was a stranger to the proceedings. The conclusion as thus stated is based upon a false premise. Both receivers, predecessor and successor, were officers of the court in which the cause was pending; and we have never understood that the authority of a successor receiver, as an officer of the court, can thus be challenged. We find no constitutional questions involved.

Other questions raised have been examined and, because of their inconsequential nature, are deemed unimportant.

The orders appealed from were proper and correct. They are affirmed, with costs to appellees.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.