UNION v. EWING.

1. EQUITY—CONSENT DECREE.
   A consent decree is primarily the act of the parties to the litigation and proper practice requires approval as to both form and substance.

2. SAME—SETTING ASIDE CONSENT DECREE.
   Generally a consent decree may not be set aside without the consent of the parties thereto.

3. SAME—CONSENT DECREE—MODIFICATION OF DECREE—REHEARING.
   A trial court has the power to modify the provisions of a so-called consent decree but only after a complete rehearing which, if necessary, should be ordered by the court itself.

4. APPEAL AND ERROR—ACCOUNTING—PLEADING—REMAND.
   Accounting suit by singing group against their manager under contract relative to recordings and publications is ordered remanded to trial court on manager's appeal, where record is such that decree entered, which may not be said to be a consent decree, covered matters not raised by the bill of complaint and no answer has been filed, permission being given to file such further pleadings as are deemed necessary to raise the questions at issue.

   BLACK, KAVANAGH, and SOURIS, JJ., for dismissal of appeal.

Appeal from Wayne; Wise (John M.), J. Submitted December 6, 1963. (Calendar No. 131, Docket No. 50,286.) Decided December 27, 1963. Rehearing denied February 4, 1964.

Bill by Edward Union, by Christine Union, his next friend, and 4 others against Willie Ewing, doing

---

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 19 Am Jur, Equity § 407.
[4] 5 Am Jur 2d, Appeal and Error § 971.

business ·as Chex Record Company, for accounting of royalties and for cancellation of management con-tract. Consent judgment, approved as to form, entered. Motion to set aside judgment denied. Defendant appeals. Reversed and remanded for further proceedings.

*Willis F. Ward,* for plaintiff on application for rehearing.

*Eddie D. Smith,* for defendant.

CARR, C. J. Suit for an accounting under contract was instituted by the above named plaintiffs in the Wayne circuit court on October 22, 1962. It appears from the bill of complaint filed that 3 of the plaintiffs were at the time under the full age of 21 and, in consequence, next friends were appointed to prosecute the action in their behalf.

The pleading alleged that on February 1, 1962, said plaintiffs had entered into a contract with the defendant, plaintiffs being described therein as "singers" performing under the name of "The Volumes." Said agreement, which was in 2 parts executed simultaneously, provided in substance that defendant should act as the manager of the plaintiffs who should perform under his supervision. They specifically agreed to take part in exhibitions and performances· whenever required by defendant to do so. Section 5 of the so-called managing contract read as follows:

"It is mutually agreed that the net proceeds of all exhibitions and other performances heretofore mentioned in this contract, wherever performed by the singers shall be divided as follows;
"a. *25%* to the manager
"b. *75%* to the singers.
"All travel expenses, railroad fares, and any and all other expenses and costs which may be incurred

or expended by the manager, of any kind whatsoever, in the proper exploitation of the singers in carrying out the purposes and intent of this agreement shall first be deducted from the gross income or receipts of any and all performances and exhibitions mentioned herein."

Plaintiffs alleged as the basis of the request for an accounting that subsequent to February 1, 1962, when the contract was executed, they made a recording of a certain song which, they averred, had been sold in large numbers, with wide distribution. It was alleged that defendant had not properly accounted with plaintiffs for moneys received from the sales of said record, and had not complied with their demands to do so. As incidental to their claimed right to an accounting, plaintiffs asked for the appointment of a receiver, for injunctive relief, and for a decree terminating the contractual relation.

On behalf of defendant, motion to dismiss the suit was filed, accompanied by a tendered accounting with reference to sales of the records in question and the amounts due to plaintiffs under the contract. The showing thus made indicated an overpayment to plaintiffs in the sum of $745.73. The hearing on the motion to dismiss was adjourned, apparently for the purpose of giving the parties to the suit an opportunity to settle their differences, if possible. From the record before us it may be inferred that negotiations progressed favorably insofar as the matters alleged in the bill of complaint were concerned. However, at a subsequent meeting the question was apparently raised as to the right of the plaintiffs to share in receipts from publication. Section 7 of the second part of the contract read as follows:

"All recordings and all records and reproductions made therefrom, together with the performances embodied therein, shall be entirely our property, free

of any claim whatsoever by you or any person deriving any rights or interest from you. Without limitations of the foregoing, Chex Record Company shall have the right to make records or any other reproductions of the performances embodied in such recordings by any method now or hereafter known, and to sell and deal in the same under any trademarks or trade names or labels designated by us. Or we may at our election be created in their favor in or in connection with the use in public performances of recordings made hereunder." (*sic.*)

Apparently, defendant Ewing insisted that under the above quoted provision of the contract all rights of publication belonged to him. It is quite possible that all provisions of the 2 sections of the agreement between the parties were not entirely consistent. It is also obvious that questions of interpretation are involved. Plaintiffs insisted on the right to share in the so-called publication receipts. In the course of a hearing before the circuit judge, counsel for plaintiffs stated on behalf of his clients that they would accept as their share 2/3 of the profits resulting from such operation, leaving 1/3 thereof for defendant. Such suggestion was approved by the circuit judge who directed counsel for the plaintiffs to prepare a proposed consent decree to settle the controversies between the parties. Such decree was prepared and was approved as to form by counsel acting for the plaintiffs and also by the attorney who at the time represented the defendant, and was signed by the circuit judge passing on the matter.

Said decree provided that plaintiffs should have judgment against defendant in the sum of $5,000 as full settlement of all accrued payments due because of the sale of the records referred to in the bill of complaint, against which amount the defendant should have a credit of $300 for money expended for uniforms furnished by him to the plaintiffs. Defend-

ant was further ordered to turn over to plaintiffs certain master tapes or recordings of other compositions, and plaintiffs were given, in equal shares, all rights to the copyrights of 4 specified songs, subject to a 20% interest of the defendant in the earnings therefrom. The decree further declared that the "publishing interests" in the 4 songs specified should be divided, 2/3 of the earnings thereof being granted to the plaintiffs and 1/3 to the defendant. It is this last named provision to which, it is claimed, defendant specifically objected.

It will be noted that the decree as drawn and entered dealt with the so-called publishing interests in a manner different from that adopted for the settlement of the dispute as to the amount owing by defendant to plaintiffs on account of the sale of the records of the song referred to in the bill of complaint. The transcript of the proceedings held before the circuit judge suggests that there was some confusion on the part of counsel, and perhaps the judge, as to the precise nature of the "publishing interests."

By substituted counsel a motion was made on behalf of defendant to vacate the so-called "consent decree", said motion being based primarily on the claim that the defendant had not consented to it. On the hearing of the motion counsel then representing defendant asked leave to offer testimony, presumably as to the claimed rights of the defendant under the clause of the second division of the contract, above quoted. The request was denied, and this appeal has resulted. It is the claim of defendant-appellant that he did not agree at any time to give to plaintiffs a share of the earnings contemplated by said section of the contract. His attitude in court on the hearing before the circuit judge was in accord with his present contention. It is his claim that the decree was improperly entered because of

his failure to assent to it, and that this Court should now direct that it be vacated.

The decree from which the appeal has been taken was drawn by counsel for the plaintiffs in accordance with the directions of the circuit judge. As before noted, however, neither attorney in the case approved it as to substance. We think the record fully justifies the conclusion that counsel then representing defendant realized that the latter did not consent to all of the provisions of the decree as drawn and that, in consequence, he approved it as to form only. A consent decree is primarily the act of the parties to the litigation and proper practice requires approval as to both form and substance, as was done in *Wurzer* v. *Geraldine,* 268 Mich 286. The nature of such a judgment or decree is the basis for the generally accepted rule that it may not be set aside without the consent of the parties thereto. *In re Estate of Meredith,* 275 Mich 278, 289 (104 ALR 348).

In the case at bar there was no answer filed to the bill of complaint, all subsequent proceedings apparently being taken with reference to the motion to dismiss. As noted at the outset, plaintiffs' pleading sought an accounting for their claimed share of the proceeds of the sale of records of a certain song. Obviously, however, the scope of the controversy was broadened by the discussions between the parties and the decree as entered covered matters not raised by the bill of complaint. The practical situation is that the issues sought to be settled by the court in accordance with the decree entered were not defined by the parties by properly drawn pleadings.

We think that the decision of this Court in *Township of Royal Oak* v. *City of Huntington Woods,* 313 Mich 137, indicates the procedure that should be observed with reference to the controversy at bar. In that case some of the parties to a consent decree were under a misapprehension as to the law govern-

ing the rights and obligations of the parties to the case. Subsequent to the filing of the decree this Court rendered a decision in another case settling certain questions involved in a manner not consistent with the consent decree as entered. The result was a rehearing and modification thereof by the trial judge. On appeal from the action taken it was held by this Court that the facts and circumstances involved justified the alteration of the decree notwithstanding the rule generally applied with reference to such attempts. The Court summarized its conclusions as to the proper method of dealing with the situation presented to it in the following statement (pp 146, 147):

"The trial court was right in assuming that under the circumstances of this case it had the power to modify the so-called consent decree, but upon such modification there should have been a complete rehearing; and if necessary the trial court should have ordered such complete rehearing on its own motion. In view of the unsatisfactory condition of the record now before this Court there appears to be no other alternative except to remand the case to the trial court for the purpose of making a record on a full rehearing of the accounting, and a determination thereof. A decree will be entered accordingly in this Court, without costs to either party. In view of our disposition of the present appeal it becomes unnecessary to pass upon other questions presented in the briefs. As to most, if not all, of such questions, we are unable to find that they were presented to or passed upon by the trial court incident to the rehearing from which this appeal is taken."

The primary question in the case at bar is whether the decree entered may properly be regarded as consented to by the appellant. On the record before us we are impressed that such question must be answered negatively. For the reasons above in-

dicated the conclusion may not be avoided that defendant did not give his approval to the provisions of said decree. The case is, therefore, remanded to the circuit court with directions to vacate the decree entered, and for further proceedings. In order that the issues involved in the controversies that have arisen between the parties may be properly determined, such further pleadings may be filed as are deemed necessary to raise the questions at issue. Appellant may have costs on this appeal.

DETHMERS, KELLY, SMITH, and O'HARA, JJ., concurred with CARR, C. J.

SOURIS, J. (*for dismissal*). Defendant seeks our appellate review of the chancellor's order denying defendant's motion to vacate a final decree. As I read our rules, appeal from such order of denial requires our granted leave because such order is not a "final order, judgment or sentence" from which appeal as a matter of right is permitted by GCR 1963, 806.1, any more than the order denying a motion to dismiss in *Eberts Cadillac Co.* v. *Miller,* 372 Mich 172, is appealable as a matter of right.

This appeal proceeds by majority vote to appellate finality only by treatment of the defendant's motion to vacate "as if" it had been a motion for rehearing and "as if" such motion for rehearing had been denied. GCR 1963, 803.1. Such use of a familiar, and sometimes helpful, procedural fiction would at least indicate our continuing, if not consistent, obeisance to our recently revised rules. Our majority's silence on this procedural point might suggest to some that appeals *as of right* henceforth may be taken from any order entered after "final order, judgment or sentence." If this be our majority's will, it should be openly stated and GCR 1963, 806.1 should be amended formally. Until such amendment, the rule should be followed by this Court,

whether invoked by appellees or not, in all cases whenever, and as soon as, failure of compliance is brought to our attention.

For this reason, I would dismiss this appeal, but would award no costs, plaintiffs having filed no brief.

BLACK and KAVANAGH, JJ., concurred with SOURIS, J.