In re Thomas Joseph KENNEDY and
Diane Michelle Kennedy,
Debtors.

Phillip B. Mustaine and Phyllis
J. Mustaine, Plaintiffs,

v.

Thomas J. Kennedy and Diane
M. Kennedy, Defendants.

Bankruptcy No. 97–30341(2)7.
Adversary No. 97–3056.

United States Bankruptcy Court,
W.D. Kentucky.

Oct. 15, 1997.

Opinion Denying Reconsideration
Jan. 15, 1998.

Richard A. Schwartz, Louisville, KY, for Mustaine.

### *MEMORANDUM–OPINION*

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter comes before this Court on the Motion of Plaintiffs, Phillip and Phyllis Mustaine ("Plaintiffs"), for Summary Judgment. The Plaintiffs are the parents of Debtor Diane Kennedy. They have filed this Adversary Proceeding against their daughter and her husband, Thomas Kennedy, also a Debtor in this action (collectively referred to as "the Debtors"), seeking a declaration that certain debts owed to them are nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). The Plaintiffs assert three claims against the Debtors: (1) a fraud claim; (2) a defamation claim; and (3) a claim for discovery sanctions awarded by the Michigan State Court.

All three claims were the subject of a Michigan State Court case filed by the Plaintiffs against the Debtors in the Ingham County Circuit Court. A Consent Judgment against the Debtors was entered

by the Michigan Court with regard to the fraud claim. The defamation claim was actually adjudicated in the Michigan Court and a judgment entered against the Debtors with regard thereto. In addition, the defamation claim was also the subject of a suit brought by the Debtors' Insurance Company in the Kentucky State Court (Jefferson Circuit Court), pursuant to which a judgment was likewise entered against the Debtors. Finally, the Plaintiffs' claim for discovery sanctions arises from an Order entered by the Michigan State Court in the context of the Plaintiffs' Michigan State Court action on the other two claims.

The Plaintiffs presently move this Court for Summary Judgment, contending that collateral estoppel precludes relitigation of the three claims, thus, entitling them to a nondischargeability judgment as a matter of law.

This Court has fully read all of the briefs filed by both parties, as well as the Michigan Consent Judgment, the Michigan Judgment on the defamation claim, the Kentucky Judgment, and the Michigan Order awarding discovery sanctions. In addition, this Court has conducted extensive research of its own. This Court finds that collateral estoppel does not apply to the Michigan Consent Judgment on the fraud claim; however, the doctrine does apply to the Michigan Judgment and Kentucky Judgment relating to the defamation claim. Thus, this Court finds that while the Plaintiffs are not entitled to Summary Judgment with regard to their fraud claim, they are entitled to Summary Judgment with regard to the defamation claim. The facts established by the Michigan and Kentucky Judgments support the Plaintiffs' § 523(a)(6) nondischargeability claim with regard to the damages awarded Plaintiffs for defamation. Thus, they are entitled by law to a judgment on that claim.

With regard to the claim for discovery sanctions, claims of that nature are deemed to be "secondary" to the underlying claim involved—in this case, the fraud claim and the defamation claim—and, accordingly, take on the dischargeability character of the underlying claims. Due to the fact that one of the two primary claims in this case is not ripe for summary judgment, the secondary discovery sanctions claim likewise cannot be considered ripe for Summary Judgment.

## FACTS

The Debtors, Diane and Thomas Kennedy, are the daughter and son-in-law of the Plaintiffs. In October 1995, the Plaintiffs filed suit against the Debtors in Michigan State Court, asserting claims for fraud and defamation, along with various other claims. The fraud and defamation claims are the only claims that are relevant to the present Adversary Proceeding.

### A.  DEFAMATION CLAIM.

The Plaintiffs' claim for defamation arises from various statements made by the Debtors to third parties regarding the paternity of Debtor Diane Kennedy's father. From the Michigan State Court Judgment, it appears that the Debtors learned of rumors that Mrs. Kennedy's Mother, Plaintiff Phyllis Mustaine, had been involved in an extra-marital affair with a Mr. George Wilbur at some time prior to Mrs. Kennedy's birth. Thereafter, the Debtors began to make statements to various third parties that Plaintiff Phillip Mustaine was not Mrs. Kennedy's biological father, but rather George Wilbur was her biological father.

After making numerous statements to this effect, Debtor Diane Kennedy and George Wilbur eventually traveled to the Molecular Diagnostic Center of Good Samaritan Hospital in Cincinnati, Ohio, in July of 1995, for the purpose of having a DNA test conducted to determine whether they were biologically father and daughter. On July 19, 1995, the Debtors received the results from the DNA parentage test, which expressly excluded George Wilbur as Diane Kennedy's biological father. The

report from the Molecular Diagnostic Center states that "[b]ased on testing results obtained from analysis of 3 different DNA probes, the probability of paternity for George Wilbur is 0.0%."

Despite the DNA paternity test results, the Debtors continued to state to various third parties that George Wilbur was Mrs. Kennedy's biological father, rather than Mr. Mustaine. In October of 1995, the Plaintiffs filed their Michigan State Court lawsuit, which included the defamation claim based on these statements.

Ruling from the Bench, the Michigan Circuit Court found that the Plaintiffs had sustained their burden of proof under Michigan law on the defamation claim. The Court furthermore found that the defamatory statements were made without just cause or excuse, and were not protected as privileged communications. Finding that the Plaintiffs had sustained damages of $65,000.00 as a result of the defamatory remarks, the Court entered a Judgment in their favor for that amount.

The Michigan lawsuit was not the only lawsuit involving the Plaintiffs' defamation claim. That claim was also the subject of a lawsuit filed in Kentucky, in the Jefferson Circuit Court. The Debtors were insured under a homeowner's insurance policy issued by Kentucky Farm Bureau Mutual Insurance Company ("KFB"), which was in effect at the time the Michigan lawsuit was filed. KFB received notice of that lawsuit on January 24, 1996, and on June 18, 1996, brought the Kentucky lawsuit seeking a declaratory judgment against the Debtors with regard to the homeowner's insurance policy coverage and KFB's duty to defend. KFB sought by the Kentucky lawsuit a declaration that the claims arising out of the Michigan lawsuit did not come within the scope of the Debtors' insurance policy coverage.

The Kentucky Court found that the defamatory statements at issue were intentional in nature. Moreover, the Court found that statements that a child was fathered by someone other than one's spouse are inherently injurious, and thus, give rise to an expectation of injury as a matter of law. Finding that the defamatory statements at issue were of an intentional character, as opposed to an "accidental" occurrence, and gave rise to an expectation of harm, the Kentucky Court concluded that the Plaintiffs' defamation claims fell outside of the insurance policy's scope of coverage. The Court found that the policy was not only limited to "accidental" occurrences, but also expressly excluded injury that was "expected" or "intended" by the insured.

### B. FRAUD CLAIMS.

In addition to the defamation claims, the Plaintiffs also asserted fraud claims against the Debtors in the Michigan Court action. The Plaintiffs have asserted that the Debtors fraudulently induced them to loan the Debtors $52,724.04. The parties agreed to mediate this particular claim, and were ultimately able to arrive at an agreement through that process. As a result of the mediation, the parties executed a "Consent Judgment" pursuant to which judgment was entered in favor of the Plaintiffs and against the Debtors in the amount of $50,000.00 on the fraud counts contained in the Plaintiffs' Complaint. The Consent Judgment was entered by the Court on September 25, 1996.

On October 10, 1996, the Debtors made an untimely motion to the Michigan Court to reconsider or clarify the Consent Judgment to specifically include language stating that they did not admit to any of the alleged facts supporting the fraud claim. The Michigan Court summarily overruled that motion.

Meanwhile, in the Kentucky Declaratory Judgment action filed by KFB, the Kentucky Court found that the fraud claim, like the defamation claim, was intentional in character and, therefore, not within the scope of the Debtors' homeowner's insurance coverage.

### C. *DISCOVERY SANCTIONS.*

On May 2, 1996, in the course of the Michigan lawsuit, the Plaintiff's moved the Michigan Court to enter sanctions against the Debtors for failure to respond to certain discovery requests and noncompliance with previous orders of the Michigan Court compelling discovery. The Debtors did not file a Response to the Motion, and after a hearing conducted on May 29, 1996, the Michigan Court sustained the Plaintiffs' request for sanctions, ordering the Debtors to pay the Plaintiffs "their actual attorney fees and costs incurred in connection with this Motion" (Michigan Order, Case No. 95–81490–CK, entered June 27, 1996).

### D. *DEBTORS' BANKRUPTCY*

The Debtors filed for protection under Chapter 7 of the Bankruptcy Code on January 24, 1997. The Plaintiffs filed this Adversary Proceeding on March 19, 1997, seeking to have their defamation claim declared nondischargeable under § 523(a)(6), their fraud claim declared nondischargeable under § 523(a)(2)(A), and their discovery sanctions claim declared nondischargeable under § 523(a) as ancillary to the other two claims.

### *LEGAL DISCUSSION*

### I. *SUMMARY JUDGMENT*

The Plaintiffs move for Summary Judgment asserting that the facts necessary to support their nondischargeability claims have been established by the prior Kentucky and Michigan judgments and orders, to which collateral estoppel applies precluding relitigation of those issues.

In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried.

*In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Id.,* 477 U.S. at 254, 106 S.Ct. 2505.

When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion, in this case the Debtors. *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985).

In this case, the Plaintiffs rely upon the doctrine of collateral estoppel to support their argument that the material facts are not in dispute and they are entitled to judgment as a matter of law with regard to their three claims. Thus, this Court takes this opportunity to take an in-depth look at the doctrine of collateral estoppel.

### II. *COLLATERAL ESTOPPEL.*

This Court is called upon to determine the collateral estoppel effect of a variety of State Court judgments and orders in the context of the present bankruptcy nondischargeability proceeding. In making such a determination, the Court is directed to begin its analysis with the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires federal courts to give full faith and credit to judicial proceedings of any state court. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *reh'g denied* 471 U.S. 1062, 105 S.Ct. 2127,

85 L.Ed.2d 491 (1985); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *See also Migra v. Warren School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

The Full Faith and Credit Statute directs that:

> the judicial proceedings of any court of any ... state ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738 (1994).

The United States Supreme Court has interpreted this Statute as requiring federal courts to abide by the individual states' collateral estoppel law, also known as preclusion law, when determining the preclusive effect of judgments rendered within the various states. *Marrese*, 470 U.S. at 380, 105 S.Ct. 1327; *In re Calvert*, 105 F.3d 315, 317 (6th Cir.1997). "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state court judgments." *Marrese*, 470 U.S. at 380, 105 S.Ct. 1327; *Calvert*, 105 F.3d at 317. This country has parallel systems of state and federal courts. Thus, § 1738 reflects a concern of comity by allowing the individual states to determine the preclusive scope of the judgments rendered within their boundaries and commanding the federal courts to abide by those determinations. *Marrese*, 470 U.S. at 380, 385, 105 S.Ct. 1327; *Kremer*, 456 U.S. at 481–82, 102 S.Ct. 1883; *Calvert*, 105 F.3d at 317.

Accordingly, the bankruptcy court is required at the outset to consider the law of the state in which a judgment was rendered to determine the preclusive effect to be accorded that judgment. *Marrese*, 470 U.S. at 375, 105 S.Ct. 1327; *Kremer*, 456 U.S. at 481–82, 102 S.Ct. 1883; *Calvert*, 105 F.3d at 317. Thus, if the state would give preclusive effect to the judgment at issue, then the bankruptcy court is likewise bound to accord the judgment with preclusive effect, unless it can be demonstrated that the judgment falls within an exception created by Congress. *Marrese*, 470 U.S. at 386, 105 S.Ct. 1327; *Kremer*, 456 U.S. at 468, 102 S.Ct. 1883; *Calvert*, 105 F.3d at 317 and 321.

In the case at bar, the Plaintiffs have three claims which they are seeking to have declared nondischargeable under § 523(a): (1) a defamation claim; (2) a fraud claim; and (3) a discovery sanctions claim. These three claims have been the subject of a variety of state court judgments and orders; and, to further complicate things, these judgments and orders have been rendered in legal proceedings instigated in two separate states, Kentucky and Michigan. The following judgments and orders are specifically at issue: (1) the Michigan Consent Judgment relating to the fraud claim; (2) the Michigan Judgment entered after litigation of the defamation claim; (3) the Michigan Order awarding discovery sanctions; and (4) the Kentucky Judgment as it relates to the defamation claim. Thus, the Court is bound to consider both Michigan's collateral estoppel law and Kentucky's collateral estoppel law, in an effort to determine if the requirements for nondischargeability under the pertinent sections of § 523(a) have been established by these previous state court orders and judgments with regard to each of the three claims at issue. In conducting this analysis, the Court will address each of three claims individually, the requirements for § 523(a) nondischargeability for each particular claim, and whether the required elements have been established by a prior judgment or order that would be given preclusive effect by the state in which it was rendered, Kentucky or Michigan.

## A. *THE DEFAMATION CLAIM*

The Plaintiffs move for summary judgment with regard to their defamation claim on the basis of § 523(a)(6), which provides:

A discharge under § 727 ... of this title does not discharge an individual debtor for any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

■ A debt falls within the nondischargeability exception of § 523(a)(6) only if the injury is both willful and malicious. Courts which have interpreted the meaning of "willful and malicious" have adopted various standards ranging from proof of an intentional act to proof of an intent to injure. This Court must follow the standard set forth in the Sixth Circuit Opinion *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). In that case, the Court of Appeals held that the term "willful and malicious injury" is defined as being a "wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse." *Id.* at 394 (*citing 3 Colliers on Bankruptcy* 523–111 (15th Ed.1986)). Further explanation of the term is set forth in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986). In that case, the Court defined "willful" as "deliberate or intentional." *Id.* "Malicious" is defined by the *Wheeler* Court as a "conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* at 615.

■ This standard has been applied specifically to defamation cases, and a three-part test has been developed for determining when a defamatory statement meets the § 523(a)(6) "willful" and "malicious" requirements. *In re Thompson*, 162 B.R. 748 (Bankr.E.D.Mich.1993); *See also Wheeler*, 783 F.2d at 610. In considering the three prongs of the test, it is first essential to understand how the term "defamation" has been defined by the courts. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 251, 487 N.W.2d 205 (1992), *cert. denied*, 507 U.S. 967, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *Thompson*, 162 B.R. at 752.

■ With that definition in mind, the creditor seeking the § 523(a)(6) nondischargeability determination must demonstrate: (1) the debtor intentionally published a defamatory statement; (2) the debtor knew that the defamatory statement was substantially certain to harm the person about whom the statement concerned; and (3) there was no just cause or excuse for making the statement. *Thompson*, 162 B.R. at 754.

This Court has reviewed the various Michigan and Kentucky judgments and orders brought to the Court's attention in this case, and finds that the third prong and portions of the first prong of the test are established by the Michigan Judgment entered after a trial on the Plaintiffs' defamation claim. The remaining portions of the first prong, the second prong, and the fact that the statements were "defamatory" as a matter of law are established by the Kentucky judgment. Thus, before going further, the Court must determine whether Michigan and Kentucky would accord preclusive effect to those respective judgments.

■ Michigan law applies the doctrine of collateral estoppel to preclude "relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated and (2) necessarily determined." *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630, *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990). In determining whether an issue was "actually litigated" in the prior proceeding, the Court must consider not only what has been pled and argued, but also whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Id.* at 631.

■ This Court has reviewed the Michigan judgment and finds that both the Plaintiffs and the Debtors were parties to that action. Moreover, both parties had a full and fair opportunity to litigate the issue of whether the Debtors did in fact publish statements to third parties to the effect that Mr. Mustaine was not Mrs. Kennedy's biological father, that the statements were defamatory in nature, and that there was no just cause or excuse for making the statements. The Michigan Court found after a trial on the matter that the Debtors did in fact make statements to numerous third parties that Mr. Mustaine was not her biological father, but rather George Wilbur was, and that the Debtors continued to make such statements to third parties even after the DNA parentage testing excluded Mr. Wilbur as the biological father. The Michigan Court furthermore found the statements were made without just cause or excuse, and expressly held that the statements did not fall into the classification of a privileged communication, warranting special protection. Finally, it is clear that these findings were necessary to the Michigan Court's determination that the Debtors were liable for defamation in the collective amount of $65,000.00.

Unfortunately, under Michigan law governing defamation, the trial court was only required to find "fault amounting to at least negligence." *Thompson,* 162 B.R. at 762; *Northland Wheels Roller Skating Center, Inc. v. Detroit Free Press,* 213 Mich.App. 317, 539 N.W.2d 774, 777 (1995); *Linebaugh v. Sheraton Michigan Corp.,* 198 Mich.App. 335, 497 N.W.2d 585, 587 (1993). Once the trial court found negligence, it was required to look no further to support the defamation action. Consequently, the Michigan Court limited its defamation determination accordingly, finding that the Debtors had engaged in conduct "at least amounting to negligence." Thus, the element of "intent to publish" required by § 523(a)(6) is not established by the Michigan judgment. In addition, the Michigan judgment does not clearly address the "defamatory" character of the statements pursuant to the definition of that term set forth above, and does not include a finding that the Debtors knew that the statements were "substantially certain" to harm the Plaintiffs. These findings are, however, included in the Kentucky judgment.

■ This brings us to a consideration of Kentucky's law on collateral estoppel. The Kentucky Courts have divided this doctrine into two categories: (1) offensive collateral estoppel, and (2) defensive collateral estoppel. *May v. Oldfield,* 698 F.Supp. 124 (E.D.Ky.1988); *Covington v. Board of Trustees,* 903 S.W.2d 517, 521 (Ky.1995); *Revenue Cabinet v. Samani,* 757 S.W.2d 199, 201 (Ky.App.1988). " 'Offensive collateral estoppel' refers to the successful assertion *by a party seeking affirmative relief* that a party to a prior adjudication who was unsuccessful on a particular issue in that adjudication is barred form relitigating the issue in a subsequent proceeding." *Covington,* 903 S.W.2d at 521 (emphasis added) (*citing Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); *accord May,* 698 F.Supp. at 125–26. "Defensive collateral estoppel," on the other hand, refers to *a defendant's use of a prior adjudication* to prevent a plaintiff from asserting a claim the plaintiff already unsuccessfully litigated against another defendant in a prior adjudication. *Covington,* 903 S.W.2d at 521 (emphasis added) (*citing Parklane,* 439 U.S. at 326 n. 4, 99 S.Ct. 645); *Samani,* 757 S.W.2d at 201.

The case at bar involves offensive collateral estoppel. The Plaintiffs are seeking to use the previous adjudications regarding their fraud, defamation and discovery sanctions claims to preclude further litigation of those issues. The Debtors raise the issue that the Kentucky Jefferson Circuit Court proceeding involved a different plaintiff, KFB, and thus was not an adjudication among the same parties. Accordingly, the Debtors assert, collateral estop-

pel is not available to the parties with regard to that proceeding.

■ The Court has reviewed the law on this issue and finds that both the United States Supreme Court and the Kentucky Supreme Court have rejected absolute mutuality of parties for the application of collateral estoppel. *Parklane,* 439 U.S. at 327–28, 99 S.Ct. 645; *Blonder–Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *May,* 698 F.Supp. at 127; *Covington,* 903 S.W.2d at 522; *Sedley v. City of W. Buechel,* 461 S.W.2d 556 (Ky.1970). Following the United States Supreme Court's ruling on this issue, the Kentucky Courts have expressly recognized the doctrine of "non-mutual preclusion." *See Covington,* 903 S.W.2d at 522; *Sedley,* 461 S.W.2d at 556; *Samani,* 757 S.W.2d at 201–02. Accordingly, the Debtors cannot rely upon the fact that the Kentucky case involved a different Plaintiff to prevent the application of offensive collateral estoppel to the case at bar.

■ Offensive collateral estoppel is available in Kentucky when the following requirements are met:

1. A final decision on the merits;
2. identity of the issues;
3. issue actually litigated and determined;
4. a necessary issue;
5. a prior losing litigant; and
6. a full and fair opportunity to litigate.

*May,* 698 F.Supp. at 126; *see also Covington,* 903 S.W.2d at 521–22. Additionally, the Kentucky Courts have identified seven factors that may limit the doctrine's application:

1. The broad discretion of the trial court;
2. lack of proceedings in the prior action that were available in the subsequent action;
3. an inconvenient forum in the prior action;

4. the possibility that the plaintiff could have easily joined in the prior action;
5. the bound party's lack of incentive to litigate in the prior action;
6. lack of a full and fair opportunity to litigate in the prior action; and
7. any other reasons for unfairness to the defendant.

*May,* 698 F.Supp. at 126 (*citing Parklane,* 439 U.S. at 331–32, 99 S.Ct. 645).

■ In this case, the Kentucky action was brought by KFB, the insurer on the Debtors' homeowner's insurance policy. The action was a declaratory judgment action to determine whether the Plaintiffs' fraud and defamation claims asserted in the Michigan action fell within the scope of insurance coverage under the Debtors' KFB policy. The specific issue addressed by the Kentucky action was whether the Debtors' conduct was "intentional" in nature or could be expected to cause injury. The Kentucky Jefferson Circuit Court held that it was. Specifically, the Court found that the Debtors' statements that Mr. Mustaine was not Mrs. Kennedy's father were not only defamatory in nature, but were "inherently injurious" (*Kentucky Farm Bureau Mut. Ins. Co. v. Diane and Thomas Kennedy,* Jefferson Circuit Court, Case No. 96–CI–03542, Judgment at 6). Accordingly, the Kentucky Court found that the circumstances created an expectation that harm would be caused, raising an inference of intent (Id. at 5–6). The Kentucky Court stated that "[s]tatements regarding adultery and the birth of a child fathered by someone other than one's spouse are inherently injurious" (*Id.*). Such statements, when false, are "actionable as slander per se as injury to one's reputation and the exposure to public ridicule and disgrace are presumed." (*Id.*).

When Kentucky's requirements for collateral estoppel are applied to this judgment, it is clear that the Court's holding on these issues is entitled to preclusive effect. First, the Kentucky judgment represents a final decision on the merits. Second, both

the case at bar and the Kentucky action involve the identical issues of whether the defamatory statements were intentionally made and whether the Debtors knew that the statements were substantially certain to cause harm. Third, the relevant issues were in fact actually adjudicated by the Kentucky Court. Fourth, the issues were clearly necessary to the Court's determination as to whether the claims fell within the scope of the Debtors' insurance coverage. Fifth, the Debtors were the losing litigants in that prior action, and lastly, had a full and fair opportunity to litigate. With regard to the seven limiting factors, this Court finds from its review of the record that none of those factors are present in this case.

This Court notes that in *May v. Oldfield*, 698 F.Supp. 124 (E.D.Ky.1988), the Federal District court applied the doctrine of offensive collateral estoppel in a civil action to estop the defendant from litigating the issue of his liability by virtue of his prior criminal conviction arising out of the same set of circumstances which gave rise to the civil action. The Court reached this holding on the plaintiff's motion for summary judgment, despite the following facts: (1) the defendant had refrained from putting on any proof as part of his trial strategy in the prior prosecution; (2) the plaintiff was not a party to the prior proceeding; and (3) the defendant had appealed the prior conviction and that appeal was still pending. *Id.*

Thus, this Court finds that collateral estoppel is likewise appropriate in this case.

In summation, this Court finds that the facts necessary to support a determination of nondischargeability under § 523(a)(6) of the Plaintiffs' defamation claim are clearly established by the prior Kentucky and Michigan judgments. First, the Michigan judgment establishes that the statements at issue were in fact made, while the Kentucky judgment establishes that they were

defamatory in character and intentional in nature. Second, the Kentucky judgment establishes that the statements were inherently injurious, giving rise to an inference of an expectation of harm and intent to injure.[1] Lastly, the Michigan judgment expressly established that the statements were made without just cause or excuse.

Consequently, the Plaintiffs are entitled to judgment as a matter of law pursuant to § 523(a)(6) with regard to the nondischargeability of their defamation claim.

## B. *FRAUD CLAIM*

■ In moving for summary judgment with regard to their fraud claim, the Plaintiffs rely solely upon the Michigan Consent Judgment in arguing that collateral estoppel should be applied to preclude further litigation of this claim. After reviewing Michigan's collateral estoppel law as it applies to consent judgments, this Court finds that collateral estoppel is not appropriate. As discussed above, to apply the doctrine of collateral estoppel, Michigan law requires that the issue to which the doctrine is to be applied was "(1) actually litigated, and (2) necessarily determined" in a prior proceeding which culminated in a valid, final judgment. *Gates*, 452 N.W.2d at 630. "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." *Restatement (Second) of Judgments*, § 27, Issue Preclusion, Comment e; *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 178 (7th Cir.1995); *Sylvania Silica Co. v. Berlin Township*, 186 Mich. App. 73, 463 N.W.2d 129 (1990); *Young v. Robin*, 146 Mich.App. 552, 382 N.W.2d 182, 184 (1985). This is the case with a consent judgment. When a judgment is entered by consent, none of the issues are actually litigated. *Restatement (2d) of Judgment*, § 27, Comment e; *People Who Care*, 68 F.3d at 178; *Sylvania*, 463 N.W.2d at 130.

---

1. This court notes that an inference of an "intent to injure" is over and beyond what the

Sixth Circuit requires for § 523(a)(6) nondischargeability.

*Young*, 382 N.W.2d at 184. Thus, collateral estoppel may not be applied to a consent judgment, as it is not considered to be a ruling by the Court on the merits. *Sylvania*, 463 N.W.2d at 130; *Young*, 382 N.W.2d at 184. Rather, it is "the product of an agreement between the parties." *Sylvania*, 463 N.W.2d at 130.

Specifically, the Michigan Court of Appeals has held that a judge "merely approves such an agreement and a consent judgment is unlike a litigated judgment in that it does not reflect the considered judgment of the court after litigation of the issues." *Sylvania*, 463 N.W.2d at 130; *See also People Who Care*, 68 F.3d at 178; *Young*, 382 N.W.2d at 184.

■ In discussing the common law principles governing consent judgments, the Michigan Court of Appeals has explained:

"A consent judgment differs substantially from the usual litigated judgment. It is primarily the act of the parties rather than the considered judgment of the court. *Union v. Ewing* [372 Mich. 181, 125 N.W.2d 311 (1963)]. Cf., *Tudryck v. Mutch* [320 Mich. 99, 30 N.W.2d 518 (1948)]. It ordinarily cannot be set aside by the court without the consent of the parties. *In re Estate of Meredith,* [275 Mich. 278, 266 N.W. 351, 104 ALR 348 (1936)]." *Ortiz v. Travelers Ins. Co.,* 2 Mich.App. 548, 555, 140 N.W.2d 791 (1966). "A consent judgment reflects primarily the agreement of the parties. *Dora v. Lesinski*, 351 Mich. 579, 582, 88 N.W.2d 592 (1958). The action of the trial judge in signing a judgment based thereon is ministerial only. The parties have not litigated the matters put in issue, they have settled. The trial judge has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters. *American Mutual Liability Ins. Co. v. Michigan Mutual Liability Co.*, 64 Mich.App. 315, 327, 235 N.W.2d 769 (1975), lv. den. 395 Mich. 830 (1976)".

*Young*, 382 N.W.2d. at 184; *See also People Who Care*, 68 F.3d at 178. Thus, the trial judge's role in the entry of a consent judgment is deemed by the Michigan Courts to be purely ministerial in nature. Accordingly, while consent judgments settle an issue or a variety of issues definitely between the parties, normally they "do not support an invocation of collateral estoppel." *People Who Care*, 68 F.3d at 178.

The one exception that has been recognized is where the parties have entered an agreement manifesting an intention that the judgment be conclusive with respect to one or more of the issues; such as, where one party concedes liability or the plaintiff unconditionally releases the defendant from all claims, demands, actions or causes of action arising out of circumstances giving rise to the lawsuit. *Harrison v. Bloomfield Bldg. Indus., Inc.,* 435 F.2d 1192, 1194–95 (6th Cir.1970); *People Who Care*, 68 F.3d at 178 n. 5; *Restatement (2d) of Judgments*, § 27.

No such intent was manifested by the parties in connection with the Consent Judgment at issue in the case at bar. This Court has carefully reviewed the Michigan Consent Judgment and finds that it is simply a blanket entry of judgment on the fraud counts of the Plaintiffs' Complaint. It includes no language or discussion of culpability, fault, or concessions as to liability. Nor does it contain a waiver or release of any claims, demands, actions or causes of action. Thus, the exception does not apply in this case.

The Plaintiffs make the erroneous, but novel, argument that the fraud claim actually was litigated because the Debtors moved the Michigan Court to reconsider or clarify the consent judgment to specifically include language stating that they did not admit to having committed a fraud, and the Michigan court overruled that request. Thus, the Plaintiffs argue, the fraud claim was actually litigated and ruled upon.

This Court notes that the Plaintiffs' Motion for Reconsideration or Clarification was untimely filed. Moreover, this Court has reviewed the Michigan Court's Order overruling that Motion and finds that it summarily denies the Plaintiffs' Motion without setting forth the specific grounds for the Court's ruling. Thus, it does not appear that the Michigan Court made any determinations with regard to the merits of the Plaintiffs' fraud claim. Moreover, it is highly likely that the Motion was overruled due to the untimeliness of its filing.

Accordingly, the Michigan Consent Judgment is not entitled to collateral estoppel effect, and thus, does not preclude further litigation of the issues relating to the Plaintiffs' fraud claim. Consequently, the Plaintiffs are not entitled to summary judgment with regard to this claim.

## C. *THE DISCOVERY SANCTIONS CLAIM.*

The third claim asserted by the Plaintiffs is for discovery sanctions awarded by the Michigan Court during the discovery phase of the Michigan State Court case. The Michigan Court, finding that the Debtors had failed to comply with various discovery requests, awarded the Plaintiffs "their actual attorney fees and costs incurred in connection with [their] motion" seeking sanctions. The Plaintiffs assert that the attorney fees and costs amount to $2,135.20.

■ Awards for discovery sanctions, attorneys fees, costs and interest are ancillary in nature, attaching to an underlying primary debt. *In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985); *Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir. 1987); *In re Eisenberg,* 189 B.R. 725, 732 (Bankr.E.D.Wis.1995); *In re Florida,* 164 B.R. 636, 639 (9th Cir. BAP 1994). "Consequently, their status depends on that of the primary debt." *Eisenberg,* 189 B.R. at 732; *In re Reimer,* 182 B.R. 816, 817–18 (Bankr.E.D.Mo.1995).

■ In this case, the discovery sanctions award was entered on May 29, 1996, while both the fraud claim and the defamation claim were still pending. The Consent Judgment on the fraud claim was not entered until some four months thereafter, on September 25, 1996, with the Judgment on the defamation claim being entered on January 24, 1997. Accordingly, the discovery sanctions award is ancillary to both claims and its classification for § 523(a) dischargeability purposes is contingent on the classification granted those claims.

This Court has determined that the Plaintiffs' defamation claim is nondischargeable for purposes of § 523(a)(6). However, it is premature to make a determination of § 523(a)(2)(A) nondischargeability with regard to the fraud claim, as the requisite facts have yet to be sufficiently established. Accordingly, it is likewise premature to make a determination regarding the dischargeability of the discovery sanctions award.

### *CONCLUSION*

For the above stated reasons, this Court by separate Order sustains the Plaintiffs' Motion for Summary Judgment in part and denies the Motion in part. Finding that the facts supporting an 11 U.S.C. § 523(a)(6) nondischargeability determination with regard to the Plaintiffs' defamation claim have been established by prior state court judgments entitled to collateral estoppel, this Court sustains the Plaintiffs' Motion for Summary Judgment with regard to that claim. Finding that the prior court judgment upon which the Plaintiffs rely for the § 523(a)(2)(A) nondischargeability determination of their fraud claim is not entitled to collateral estoppel, this Court finds that the requisite facts necessary to support that claim have not been sufficiently established. Accordingly, the Plaintiffs' Motion for Summary Judgment as it relates to the fraud claim is overruled. The Plaintiffs' Motion as it relates to their discovery sanctions claim is likewise premature and, hence, overruled.

## OPINION–ORDER

This matter is presently before this Court on the Defendants' Motion for Reconsideration of the Summary Judgment declaring Plaintiffs' defamation claim against Defendants to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). As grounds for their Motion, the Defendants argue that the Court's reliance on a previous Jefferson Circuit Court Judgment to support its finding of "willful and maliciousness" was in error. The Jefferson Circuit Court found that the actions of the Defendants were "intentional." Defendant argues it did not go so far as to establish that the actions were *willful and malicious* as required by 11 U.S.C. § 523(a)(6) (Defendants' Motion for Reconsideration, p. 2).

At pages 12–22 of the October 15, 1997 Memorandum–Opinion this Court found that the elements required for a finding of willfulness and maliciousness were established by a combination of *both* the Jefferson Circuit Court action *and* the Michigan judgment entered after a trial on the Plaintiffs' defamation claim.

As discussed in the Court's previous Opinion, the Sixth Circuit has defined "willful" as "deliberate or intentional." *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986). "Malicious" is defined a "conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* at 615. In applying this standard to defamation cases, a three-part test has been developed for determining when a defamatory statement meets the § 523(a)(6) "willful" and "malicious" requirements. *In re Thompson,* 162 B.R. 748 (Bankr.E.D.Mich. 1993); *See also Wheeler,* 783 F.2d at 610. The creditor seeking the § 523(a)(6) nondischargeability determination must demonstrate: (1) the debtor intentionally published a defamatory statement; (2) the debtor knew that the defamatory statement was substantially certain to harm the person about whom the statement concerned; and (3) there was no just cause or excuse for making the statement. *Thompson,* 162 B.R. at 754.

After discussing both the Jefferson Circuit Court Judgment and the Michigan Judgment (see pages 14–22), this Court found that the *combination* of the *two judgments* clearly established the facts necessary to meet each of the three prongs of the requisite test, thus supporting a determination of nondischargeability under § 523(a)(6) of the Plaintiffs defamation claim. Specifically, this Court held:

> In summation, this Court finds that the facts necessary to support a determination of nondischargeability under § 523(a) of the Plaintiffs' defamation claim are clearly established by the prior Kentucky and Michigan judgments. First, the Michigan judgment establishes that the statements at issue were in fact made, while the Kentucky judgment establishes that they were defamatory in character and intentional in nature. Second, the Kentucky judgment establishes that the statements were inherently injurious, giving rise to an inference of an expectation of harm and intent to injure. Lastly, the Michigan judgment expressly established that the statements were made without just cause or excuse.

> Consequently, the Plaintiffs are entitled to judgment as a matter of law pursuant to § 523(a)(6) with regard to the nondischargeability of their defamation claim.

Court's Memorandum–Opinion at 21–22.

As already noted by this Court at page 22, footnote 1 of its prior Opinion, the Jefferson Circuit Court's finding that the statements were inherently injurious, giving rise to an inference of an expectation of harm and intent to injure is actually over and above what the Sixth Circuit requires for § 523(a)(6) nondischargeability.

Accordingly, **IT IS HEREBY ORDERED** that the Defendants' Motion for

Reconsideration be, and is, **OVER-RULED.**

The Judgment entered by this Court on November 21, 1997, is hereby final and appealable there being no just cause for delay.