**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Marilyn Kelly     Michael F. Cavanagh
                  Elizabeth A. Weaver
                  Maura D. Corrigan
                  Robert P. Young, Jr.
                  Stephen J. Markman
                  Diane M. Hathaway

FILED JULY 29, 2009

GARY L. BUSH, SR., as Guardian of
GARY E. BUSH, a protected person,

      Plaintiff-Appellee,

v                                  No. 136617

BEHROOZ-BRUCE SHABAHANG, M.D.,
GEORGE T. SUGIYAMA, M.D.,
M. ASHARAF MANSOUR, M.D.,
VASCULAR ASSOCIATES, P.C., and
SPECTRUM HEALTH BUTTERWORTH
CAMPUS,

      Defendants,

and

JOHN CHARLES HEISER, M.D., and
WEST MICHIGAN CARDIOVASCULAR
SURGEONS,

      Defendants-Appellants.
_____

GARY L. BUSH, SR., as Guardian of
GARY E. BUSH, a protected person,

      Plaintiff-Appellee,

v                                  No. 136653

BEHROOZ-BRUCE SHABAHANG, M.D.,

Defendant-Appellant,

and

JOHN CHARLES HEISER, M.D.,
WEST MICHIGAN CARDIOVASCULAR
SURGEONS,
GEORGE T. SUGIYAMA, M.D., M.
ASHRAF MANSOUR, M.D., VASCULAR
ASSOCIATES, P.C., and SPECTRUM
HEALTH BUTTERWORTH CAMPUS,

Defendants.

_____

GARY L. BUSH, SR., as Guardian of
GARY EDWARD BUSH, a protected
person,

Plaintiff-Appellee,

v                                                         No. 136983

BEHROOZ-BRUCE SHABAHANG, M.D.,
JOHN CHARLES HEISER, M.D.,
WEST MICHIGAN CARDIOVASCULAR
SURGEONS, GEORGE T. SUGIYAMA,
M.D., M. ASHRAF MANSOUR, M.D., and
VASCULAR ASSOCIATES, P.C.,

Defendants,

and

SPECTRUM HEALTH BUTTERWORTH
CAMPUS,

Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

2

HATHAWAY, J.

At issue before this Court is the proper interpretation of MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004. We have been asked to consider whether a defect in a timely mailed notice of intent (NOI), provided to a medical malpractice defendant pursuant to MCL 600.2912b, precludes the tolling of the statute of limitations on a plaintiff's medical malpractice claim. We also consider whether, and under what circumstances, a plaintiff may take advantage of the 154-day statutory waiting period provided under MCL 600.2912b(8).

We conclude that the 2004 amendments of MCL 600.5856 have significantly clarified the proper role of an NOI provided pursuant to MCL 600.2912b. While the former statute, MCL 600.5856(d), has been interpreted to preclude tolling when defects are found in an NOI, the current statute, § 5856(c), makes clear that the question whether tolling applies is determined by the timeliness of the NOI. Thus, if an NOI is timely, the statute of limitations is tolled despite defects contained therein. Moreover, in light of this significant clarification of § 5856, we hold that the purpose of the NOI statute is better served by allowing for defects in NOIs to be addressed in light of MCL 600.2301, which allows for amendment and disregard of "any error or defect" where the substantial rights of the parties are not affected and the cure is in the furtherance of justice. We hold that the mandates of § 2301 are met when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Finally, we hold that a plaintiff may take advantage of the 154-day waiting period provided in

3

§ 2912b(8) where a defendant fails to make a good-faith attempt to reply to the plaintiff's NOI in compliance with the statutory content requirements.

We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The underlying facts and procedural history of this case were well set forth by the Court of Appeals. The Court of Appeals summarized:

> On August 7, 2003, Gary E. Bush (Bush), who was 33 at the time, had surgery to repair an aortic aneurysm at Spectrum Health's Butterworth Campus. Shabahang and Heiser, who are surgeons employed by WM Cardiovascular, performed the surgery. Plaintiff, Bush's guardian, claims that when Shabahang cut open Bush's chest, he lacerated the aneurysm, which made it necessary for Heiser to cannulate Bush's femoral artery and femoral vein so that Bush could be placed on a heart-bypass machine before the surgery could proceed. Defendants George T. Sugiyama, M.D., and M. Ashraf Mansour, M.D., who are vascular surgeons with defendant Vascular Associates, P.C., repaired Bush's femoral artery and femoral vein, respectively. According to plaintiff, the injuries Bush suffered during the surgery and during his recovery rendered him unable to lead an independent life.

> On August 5, 2005, which was just days before the expiration of the applicable period of limitations, plaintiff served a notice of intent to file a medical-malpractice complaint against Shabahang, Heiser, Sugiyama, Mansour, WM Cardiovascular, Vascular Associates, and Spectrum Health. Sugiyama, Mansour, Vascular Associates, and Shabahang responded to plaintiff's notice as required by MCL 600.2912b(7). On January 27, 2006, which was 175 days after plaintiff served notice on defendants, plaintiff filed his complaint against all defendants.

> Shortly thereafter, Sugiyama, Mansour, and Vascular Associates moved for summary disposition under MCR 2.116(C)(7), (8), and (10). They argued that dismissal was appropriate on two

4

grounds: (1) plaintiff failed to file a notice that complied with the requirements of MCL 600.2912b, and (2) plaintiff failed to wait the required 182 days before filing his complaint. Shabahang, Heiser, and WM Cardiovascular joined the motion. Spectrum Health later filed its own motion for summary disposition based solely on the alleged deficiency of the notice.

In response to these motions, plaintiff argued that the notice met the minimum statutory requirements. Plaintiff responded to the allegations that the complaint was prematurely filed by arguing that the responses to the notice were deficient. Because defendants' responses to the notice were deficient, plaintiff contended that he could properly file his complaint after 154 days from the date of service of the notice. Hence, plaintiff concluded, his complaint was not prematurely filed.

The trial court determined that the notice was insufficient with regard to Sugiyama, Mansour, and Vascular Associates. On the basis of that conclusion, the trial court granted summary disposition in favor of Sugiyama, Mansour, and Vascular Associates. The trial court also granted summary disposition in favor of Spectrum Health, but only to the extent that its alleged liability was based on the actions of Sugiyama and Mansour. The trial court also granted summary disposition in favor of Spectrum Health with regard to the claims of negligence on the part of Spectrum Health's physician assistants because plaintiff failed to file a conforming affidavit of merit. However, "[a]s to the other doctors and defendants . . . the Court's of the opinion that the [notice] is clearly sufficient, so those motions are denied." The trial court also determined that plaintiff's complaint was not prematurely filed. [1]

Defendants appealed the trial court's orders. The Court of Appeals consolidated defendants' applications for leave to appeal. On May 1, 2008, the Court of Appeals issued a published opinion affirming in part, reversing in part, and remanding to the trial court for further proceedings.[2] The Court of Appeals

---

[1] *Bush v Shabahang*, 278 Mich App 703, 706-708; 753 NW2d 271 (2008).

[2] *Id.* at 726-727.

5

held that, when read as a whole, the NOI was sufficient to comply with the requirements of MCL 600.2912b(4), except with regard to the claims of direct liability for training and supervision against West Michigan Cardiovascular. The Court also concluded that certain claims for vicarious liability against Spectrum Health were inadequately pled.[3] Accordingly, the Court of Appeals reversed the trial court's denial of summary disposition on the deficiently pled direct liability claims and remanded to the trial court for an order granting the motion for summary disposition and dismissing the claims without prejudice. The Court of Appeals affirmed the trial court's ruling that plaintiff's complaint was timely filed, holding that plaintiff could avail himself of the shortened 154-day waiting period because the defendants' response to the NOI was deficient. Defendant Spectrum Health's motion for reconsideration of the opinion was denied.

Defendants filed three separate applications for leave to appeal in this Court. This Court consolidated the appeals and granted oral argument on the application.[4] After oral argument on the application, this Court granted leave to appeal.[5]

---

[3] The Court of Appeals held that the claims for vicarious liability for the physicians' assistant and the nursing staff were inadequately pled, but the claims against Heiser and Shabahang were sufficient.

[4] *Bush v Shabahang*, 482 Mich 1014 (2008).

[5] *Bush v Shabahang*, 482 Mich 1105 (2008).

6

## II. STANDARD OF REVIEW

The issues presented are issues of statutory interpretation. Statutory interpretation is a question of law, which this Court reviews de novo.[6] This Court also reviews de novo a trial court's decision regarding a motion for summary disposition.[7]

## III. ANALYSIS

### A. MCL 600.5856(c) and Tolling

The first issue this Court is asked to address is whether the defects identified in plaintiff's NOI act to bar tolling of the statute of limitations under MCL 600.5856(c) as amended by 2004 PA 87, effective April 22, 2004. Our analysis necessarily begins with a review of the language of § 5856 before and after the 2004 amendments.

The relevant language of § 5856(d), the predecessor to § 5856(c),[8] provided that tolling is operative if the "notice is given *in compliance with section 2912b*." (Emphasis added.) The relevant language of § 5856(c) currently provides that tolling is operative "[a]t the time notice is given *in compliance with the applicable notice period under section 2912b* . . . ." (Emphasis added.) The question arises

---

[6] *In re Investigation of March 1999 Riots in East Lansing (People v Pastor)*, 463 Mich 378, 383; 617 NW2d 310 (2000).

[7] *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000).

[8] The former § 5856(d) was renumbered by the amendment and now appears as § 5856(c).

whether the amendment mandates compliance with the entirety of § 2912b, such that a defective NOI does not get the benefit of tolling, or whether the new language focuses on compliance with only the applicable notice period in § 2912b, such that a defective NOI tolls the statute of limitations as long as it is compliant with the notice period.

This question was seemingly answered in *Roberts v Mecosta Co Gen Hosp* (*Roberts I*)[9] and *Boodt v Borgess Med Ctr*,[10] both of which held that a defect in an NOI precludes tolling of the statute of limitations during the 182-day waiting period. *Roberts I* opined that MCL 600.5856(d) and MCL 600.2912b were inextricably tied. The Court held that "the statute of limitations cannot be tolled under MCL 600.5856(d) unless notice is given in compliance with all the provisions of MCL 600.2912b."[11]

However, this holding was foundationally premised on the pre-amendment language. The Court explained:

> Section 5856(d) clearly provides that notice must be compliant with § 2912b, not just § 2912b(2) as plaintiff contrarily contends. Had the Legislature intended only the delivery provisions of § 2912b to be applicable, we presume that the Legislature would have expressly limited compliance only to § 2912b(2). However, the Legislature did not do so. Rather, it referred to all of § 2912b.

---

[9] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 642 NW2d 663 (2002).

[10] *Boodt v Borgess Med Ctr*, 481 Mich 558, 561; 751 NW2d 44 (2008).

[11] *Roberts I*, *supra* at 59.

8

Since the statute is clear and unambiguous, this Court is required to enforce § 5856(d) as written. As a result, the tolling of the statute of limitations is available to a plaintiff only if all the requirements included in § 2912b are met.[12]

Significantly, *Roberts I* interpreted the *former* MCL 600.5856(d), as the amendment was not enacted until after *Roberts I* was decided. *Boodt*, while decided in 2008, made no reference to the 2004 amendment. Rather, it relied on the *Roberts I* interpretation of the former § 5856(d), presumably because the complaint in *Boodt* was filed prior to the 2004 amendment. Neither *Roberts I* nor *Boodt* addressed the question at issue here, namely, whether the current language of § 5856(c) mandates that defects in an NOI act as a bar to tolling of the statute of limitations. Since *Roberts I* and *Boodt* relied on language of a statute that is no longer in existence, examining the correct interpretation of § 5856(c) and its interrelationship with § 2912b is an issue of first impression.

The question this Court addresses is one of statutory construction. Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[13] In determining the intent of the Legislature, this Court must first look to the language of the statute.[14] The Court must, first and foremost, interpret

---

[12] *Id*. at 64.

[13] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[14] *Id*.

the language of a statute in a manner that is consistent with the intent of the Legislature.[15] "'As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.'"[16] Moreover, when considering the correct interpretation, the statute must be read as a whole.[17] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[18] While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme.[19] A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained.[20] The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme.[21] Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning

---

[15] *Id.*

[16] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570, 579 (2008), quoting *Sun Valley*, *supra* at 237.

[17] *Sun Valley*, *supra* at 237.

[18] *Herman*, *supra* at 366.

[19] *Id.*, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[20] *Wayne Co v Auditor General*, 250 Mich 227, 233; 229 NW 911 (1930).

[21] *Id*. at 234.

10

of the statute itself or a desire to clarify the correct interpretation of the original statute.[22] Finally, an analysis of a statute's legislative history is an important tool in ascertaining legislative intent.[23]

To determine the intent of MCL 600.5856(c), we first look at its plain language. The pre-amendment version of § 5856 stated:

*The statutes of limitations or repose are tolled:*

(a) At the time the complaint is filed and a copy of the summons and complaint are served on the defendant.
(b) At the time jurisdiction over the defendant is otherwise acquired.
(c) At the time the complaint is filed and a copy of the summons and complaint in good faith are placed in the hands of an officer for immediate service, but in this case the statute is not tolled longer than 90 days after the copy of the summons and complaint is received by the officer.
(d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date *notice is given in compliance with section 2912b*. [Emphasis added.]

MCL 600.5856, as amended by the Legislature in 2004, states:

*The statutes of limitations or repose are tolled in any of the following circumstances:*

(a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

---

[22] See *Lawrence Baking Co v Unemployment Compensation Comm*, 308 Mich 198, 205; 13 NW2d 260 (1944).

[23] See *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999).

11

(b) At the time jurisdiction over the defendant is otherwise acquired.

(c) *At the time notice is given in compliance with the applicable notice period under section 2912b*, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given. [Emphasis added.]

In comparing the pre- and post-amendment language, it is clear that the focus of the operative language has been clarified. *Roberts I* opined that the focus of § 5856(d) was on compliance with § 2912b in its entirety. In contrast, the focus of the new § 5856(c) is unquestionably limited to compliance with the "applicable notice period."

As *Roberts I* pointed out, if the Legislature had intended to limit the applicability of § 2912b, it would have expressly limited compliance in the statute. The 2004 amendment of § 5856 does precisely that. It limits compliance to the notice period under § 2912b. Thus, pursuant to the clear language of § 2912b and the new § 5856(c), if a plaintiff complies with the applicable notice period before commencing a medical malpractice action, the statute of limitations is tolled.

Defendants ask us to disregard the change to the language of § 5856 and assume that the change was merely inadvertent. They urge us to interpret the amended statute in the same manner that *Roberts I* and *Boodt* interpreted the pre-amended statute. We cannot do so. This Court cannot assume that language

12

chosen by the Legislature is inadvertent.[24]  To the contrary, this Court must assume that an express legislative change denotes either a change in the meaning of the statute itself or a clarification of the original legislative intent of the statute.[25]  We cannot assume that the change means nothing at all.  The language of the new § 5856(c), "compliance with the applicable notice period under section 2912b," clearly and unequivocally sets forth that a plaintiff's NOI must comply only with the applicable notice period.

In sum, neither the *Roberts I* nor the *Boodt* analysis applies in the matter before us because both analyses were based on a former version of § 5856 that is no longer in existence.  The Legislature, in exercising its authority, has changed the language of the statute and we must abide by that action.  Thus, we hold that, pursuant to the clear language of § 2912b and § 5856(c), if a plaintiff files a timely NOI before commencing a medical malpractice action, the statute of limitations is tolled despite the presence of defects in the NOI.

---

[24] *Lawrence Baking*, *supra* at 205.

[25] *Id*.  See also *Ettinger v City of Lansing*, 215 Mich App 451; 546 NW2d 652 (1996), wherein Justice Markman, then sitting at the Court of Appeals and joined by then-Judge Corrigan, opined:

> We note that plaintiffs correctly state the general proposition that changes in statutory language presumably reflect a change in meaning.  *Wortelboer v Benzie Co*, 212 Mich App 208, 217; 537 NW2d 603 (1995).  However, changes in statutory language may reflect an attempt to clarify the meaning of a provision rather than change it.  *Id.*; see also *Evans v Hebert*, 203 Mich App 392, 403; 513 NW2d 164 (1994).

13

## B. Consequence of a Defective NOI

In light of the fact that a defective NOI does not bar tolling of the statute of limitations under § 5856(c), we must now consider what a court must do when presented with a defective NOI.[26]

We must again begin our analysis by examining the language of the statute itself. MCL 600.2912b states in relevant part:

> (1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

> (2) The notice of intent to file a claim required under subsection (1) shall be mailed to the last known professional business address or residential address of the health professional or health facility who is the subject of the claim. Proof of the mailing constitutes prima facie evidence of compliance with this section. If no last known professional business or residential address can reasonably be ascertained, notice may be mailed to the health facility where the care that is the basis for the claim was rendered.

> * * *

> (4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

---

[26] The *Boodt* Court opined that because no tolling was afforded in the presence of a defect pursuant to § 5856(d), the plaintiff's action was not commenced under § 2912b(1). *Boodt*, *supra* at 562-563. Our analysis today explains that the Legislature has made it clear that a defective NOI does not preclude tolling of the statute of limitations for cases bought under § 5856(c). As a result, whether a medical malpractice action is commenced for purposes of § 5856(a) does not depend on the presence or absence of defects within the NOI.

14

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

* * *

(7) Within 154 days after receipt of notice under this section, the health professional or health facility against whom the claim is made shall furnish to the claimant or his or her authorized representative a written response that contains a statement of each of the following:

(a) The factual basis for the defense to the claim.

(b) The standard of practice or care that the health professional or health facility claims to be applicable to the action and that the health professional or health facility complied with that standard.

(c) The manner in which it is claimed by the health professional or health facility that there was compliance with the applicable standard of practice or care.

(d) The manner in which the health professional or health facility contends that the alleged negligence of the health professional or health facility was not the proximate cause of the claimant's alleged injury or alleged damage.

(8) If the claimant does not receive the written response required under subsection (7) within the required 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period.

15

The plain language of § 2912b(1) mandates that a plaintiff shall not commence an action for medical malpractice without filing a timely NOI. Notably, however, the statute is silent regarding the consequences of filing a defective NOI. The statute makes no reference whatsoever to a mandatory dismissal penalty in the event of a defect. Thus, our inquiry begins with whether a mandatory dismissal with prejudice under § 2912b was the intent of the Legislature. In the absence of an express directive within the statute itself, the legislative history of § 2912b, the statute's purpose, its placement within the broader statutory scheme, and a review of other relevant statutes are instructive guides.

A review of the legislative history reveals that the Legislature did not intend for a defect in an NOI to be grounds for dismissal with prejudice based on § 2912b. The clearest indication for this conclusion was the Legislature's complete rejection of a mandatory dismissal clause. The statute creating NOIs was originally introduced as Senate Bill 270 on January 28, 1993.[27] NOIs were codified in what was then proposed § 2912f. Section 2912d, a proposed companion to § 2912f, contained a mandatory dismissal penalty for failure to comply with § 2912f. The bill as introduced provided:

---

[27] This bill was introduced in the Senate by Senators DeGrow, Van Regenmorter, Gast, Cisky, Welborn, Wartner, Emmons, Schwarz, Ehlers, Geake, Arthurhultz, DiNello, Koivisto, Bouchard, Dunaskiss, Pridnia, and McManus.

Except as otherwise provided in this subsection, in an action alleging medical malpractice, *the court shall dismiss a claim not included in the notice required under section 2912f.* [Emphasis added.]

Significantly, this penalty provision did not have sufficient votes to pass. Mandatory dismissal was not the will of the Legislature. This Court has previously recognized that legislative history may be used to determine legislative intent. This Court previously held that "[w]here the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to authorize what the Legislature explicitly rejected."[28] We can draw no conclusion from the omission of the dismissal

---

[28] *In re MCI Telecom Complaint*, *supra* at 415. Similarly, *Univ Med Affiliates, PC v Wayne Co Executive*, 142 Mich App 135, 140; 369 NW2d 277 (1985), held that the legislative history of a statute may be considered and, where it can be shown that certain language was affirmatively rejected, the court should not give the statute a construction that the Legislature plainly refused to give. As the Court explained in *In re MCI Telecom Complaint*:

[W]e find the meaning of § 312a, standing alone, to be unambiguous on its face. The statutory language clearly requires that, should interLATA prohibitions be removed, Ameritech must provide intraLATA toll dialing parity. There is, however, nothing on the face of this statute, or within the language enacted by the Legislature, that would hold the reverse to be true. Indeed, where the Legislature specifically considered language authorizing such a linkage, and rejected it, the Court of Appeals clearly erred in holding that the statute inextricably linked intraLATA and interLATA toll dialing parity. [*Id*. at 415-416.]

See also *Nation v WDE Electric Co*, 454 Mich 489, 492-493, 495; 563 NW2d 233 (1997); *Miller v State Farm Mut Automobile Ins Co*, 410 Mich 538, 566; 302 NW2d 537 (1981); and *People v Adamowski*, 340 Mich 422, 429; 65 NW2d 753 (1954).

17

penalty in § 2912b other than it was not the intent of the Legislature to incorporate a mandatory dismissal penalty into § 2912b.

The stated purpose of § 2912b was to provide a mechanism for "promoting settlement without the need for formal litigation, reducing the cost of medical malpractice litigation, and providing compensation for meritorious medical malpractice claims that would otherwise be precluded from recovery because of litigation costs . . . ."[29] To hold that § 2912b in and of itself mandates dismissal with prejudice would complicate, prolong, and significantly increase the expense of litigation. Dismissal with prejudice would be inconsistent with these stated purposes.

Further, in determining legislative intent, we must look to § 2912b's context within the broader medical malpractice statutory scheme. To do so, we examine the statute as a whole. Our review of the medical malpractice legislation indicates that it was designed as a balanced scheme, imposing equivalent requirements on both plaintiffs and defendants. Both are required to participate in the NOI process and file comparable documents.[30] Both are required to file comparable affidavits to accompany complaints and answers.[31] Both are required

---

[29] Senate Legislative Analysis, SB 270, August 11, 1993; House Legislative Analysis, HB 4403-4406, March 22, 1993.

[30] See MCL 600.2912b.

[31] See MCL 600.2912d and MCL 600.2912e.

to meet the same expert witness qualifications.[32]  In light of these comparable and balanced requirements, the penalties should likewise be comparable.  It is significant that the only penalty provision included in § 2912b is very minor: a shortening of the defendant's waiting period by 28 days.[33]  In light of the minor penalty for a defendant, it would be inconsistent with the balanced approach in the legislative scheme to assume that the Legislature intended to impose on plaintiffs the harshest penalty possible: dismissal with prejudice.[34]

In determining legislative intent, we should also consider other relevant statutory provisions.  To that end, we consider the Revised Judicature Act (RJA) to see if other appropriate remedies exist that are consistent with the intended purpose of § 2912b.  We have long recognized that the RJA does provide a mechanism to cure certain defects within pleadings in MCL 600.2301.  We note that the language of § 2301 goes beyond the limited concept of amendment of

---

[32] MCL 600.2169.

[33] MCL 600.2912b(8).

[34] Given the Legislature's clear rejection of dismissal as a penalty in § 2912b, and its amendment of § 5856(d), we question whether the Legislature ever intended § 5856(d) to preclude tolling of the statute of limitations in the presence of defects in an NOI.  The timing of the amendment, the language chosen, and the legislative history support the conclusion that the change was intended to be a clarification of the original intent of the statute rather than it being representative of a change from the original intent.  Accordingly, we question whether *Roberts I* and *Boodt* were correctly decided, as they failed to consider the entire legislative scheme and the legislative history involved.  However, because the NOI and filing in this case occurred after 2004, this issue is not before us and we will refrain from deciding this issue in the present case.

19

"pleadings" and allows for curing of certain defects in any "process, pleading or proceeding."

MCL 600.2301 states:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

Service of an NOI is clearly part of a medical malpractice "process" or "proceeding" in Michigan.[35] Section 2912b mandates that "an action alleging medical malpractice" in Michigan "shall not commence . . . unless the person has given the health professional or health facility written notice . . . ."[36] Since an NOI must be given before a medical malpractice claim can be filed, the service of an NOI is a part of a medical malpractice "proceeding." As a result, § 2301 applies to the NOI "process."[37] As Justice Cavanagh opined in his dissent in *Boodt*, this

---

[35] See *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 691; 684 NW2d 711 (2004) (*Roberts II*) ("[W]e acknowledge that the notice of intent is provided at the earliest stage of a medical malpractice *proceeding*." [Emphasis supplied.]); *Boodt*, *supra* at 561.

[36] MCL 600.2912b(1).

[37] We note that the majority in *Boodt* engaged in some limited discussion of § 2301 in a footnote. *Boodt*, *supra* at 567 n 4. However, as we previously indicated, the *Boodt* majority did not reach this issue in light of its holding that, because the NOI was deficient, no action was pending, and § 2301 only applies to

Court has for several decades applied MCL 600.2301 or its predecessor (which contained nearly identical language) to allow amendment of documents that, although not aptly characterized as pleadings, might well fall under the broad category of a "process" or "proceeding."[38] Accordingly, we hold that § 2301 may be employed to cure defects in an NOI.

We recognize that § 2301 allows for amendment of errors or defects, whether the defect is in form or in substance, but only when the amendment would be "for the furtherance of justice." Additionally, § 2301 mandates that courts disregard errors or defects when those errors or defects do not affect the substantial rights of the parties. Thus, the applicability of § 2301 rests on a two-pronged test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice. If both of these prongs are satisfied,

_____

pending actions. Again, as this analysis is based on the former § 5856(d), it is no longer applicable.

[38] *Boodt*, *supra* at 567-572 (Cavanagh, J., dissenting). See also *Tudryck v Mutch*, 320 Mich 99, 107; 30 NW2d 518 (1948) (applying the predecessor statute of MCL 600.2301 to allow amendment to a settlement agreement); *Fildew v Stockard*, 256 Mich 494, 498-499; 239 NW2d 868 (1932) (applying the predecessor statute of MCL 600.2301 to allow amendment of an affidavit for a writ of garnishment that was required to be filed before commencement of that action); *Hopkins & Son v Green*, 93 Mich 394, 395-396; 53 NW 537 (1892) (applying the predecessor statute of MCL 600.2301 to allow amendment of a bond); *Bole v Sands & Maxwell Lumber Co*, 77 Mich 239, 241-242; 43 NW 873 (1889) (holding that a summons could be amended pursuant to the "process, pleading or proceeding" language of the predecessor statute of MCL 600.2301).

a cure will be allowed "on such terms as are just."[39] Given that NOIs are served at such an early stage in the proceedings, so-called "defects" are to be expected. The statute contemplates that medical records may not have been turned over before the NOI is mailed to the defendant.[40] Defendants who receive these notices are sophisticated health professionals with extensive medical background and training. Indeed, these same defendants are allowed to act as their own reviewing experts. A defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the NOI. Accordingly, we conclude that no substantial right of a health care provider is implicated. Further, we hold that the second prong of the test, which requires that the cure be in the furtherance of justice, is satisfied when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Thus, only when a plaintiff has not made a good-faith attempt to comply with § 2912b(4) should a trial court consider dismissal of an action without prejudice.

We must now turn to the instant NOI to determine the nature of the defect and whether § 2301 may be invoked. The NOI is 13 pages long. Plaintiff made a good-faith attempt to address each of the subsections enumerated in § 2912b(4). The Court of Appeals held, and we agree, that the vast majority of plaintiff's NOI

---

[39] MCL 600.2301.

[40] MCL 600.2912b(5) provides for the exchange of medical records.

22

was in compliance with § 2912b(4).[41]  The Court of Appeals held that the NOI was defective with respect to the claims made against defendant West Michigan Cardiovascular for direct liability for training and supervision, and also with respect to the claims for direct liability asserted against Spectrum Health for its nurses and physician assistants.  In analyzing these defects, the Court of Appeals stated:

> Plaintiff's notice does not adequately address the standard of care applicable to WM Cardiovascular under a direct theory of liability for failure to properly train or hire.  The notice merely provides that WM Cardiovascular should have hired competent staff members and properly trained them.  But the notice identifies no relevant standard for determining competency or properly training staff persons.  Nor can the standard be gleaned from the other sections of the notice: plaintiff failed to state how WM Cardiovascular's hiring and training practices violated that standard, failed to state which hiring practices or training methods it should have employed, and failed to state how those improper practices proximately caused Bush's injuries.  For this reason, to the extent that plaintiff's claims rest on these theories, the trial court should have granted summary disposition in favor of WM Cardiovascular.

> * * *

> Although plaintiff's notice alleges errors on the part of Spectrum Health's nursing staff and physician assistants, the notice does not purport to state a separate standard of care for the nurses and physician assistants.  This problem is compounded by the fact that the notice does not delineate the specific actions taken by the nursing staff or physician assistants that purportedly breached the standard of care.  Rather, plaintiff's notice generally asserts that the staff should have performed monitoring, charting, assessing, and

---

[41] The court found no defects with regard to the claims against the individually named doctors, the vicarious liability claims against West Michigan Cardiovascular Surgeons, and the vicarious liability claims against Spectrum Health for Heiser and Shabahang.

23

reporting and engaged in advocacy for the patient and otherwise challenged the actions of physicians. Finally, the notice does not state the manner in which the identified breaches proximately caused Bush's injuries. Thus, even when the notice is read as a whole, it does not adequately address the standard of care applicable to Spectrum Health's staff other than Heiser and Shabahang. For that reason, we agree with Spectrum Health that the trial court erred when it concluded that plaintiff's notice met the minimum requirements of MCL 600.2912b(4)(b) with regard to Spectrum Health's nursing staff and physician assistants. Likewise, to the extent that plaintiff purported to give notice that Spectrum Health could be held directly liable for Bush's injuries on the basis of the theories that it negligently hired or failed to train its staff, for the same reasons we explained with regard to WM Cardiovascular, we conclude that the notice did not meet the requirements of MCL 600.2912b.[42]

We agree with the Court of Appeals that these omissions do constitute defects in the NOI. However, we disagree with the Court of Appeals regarding the appropriate remedy. We are not persuaded that the defects described by the Court of Appeals warrant dismissal of a claim. These types of defects fall squarely within the ambit of § 2301 and should be disregarded or cured by amendment. It would not be in the furtherance of justice to dismiss a claim where the plaintiff has made a good-faith attempt to comply with the content requirement of § 2912b. A dismissal would only be warranted if the party fails to make a good-faith attempt to comply with the content requirements.[43] Accordingly, we hold that the alleged defects can be cured pursuant to § 2301 because the substantial rights of the

---

[42] *Bush*, 278 Mich App at 711, 716-717 (citations omitted).

[43] See defendant's response to plaintiff's NOI, *infra* at 27, which provides an example of a failure to demonstrate a good-faith attempt to comply with the content requirements.

parties are not affected, and "disregard" or "amendment" of the defect is in the furtherance of justice when a party has made a good-faith attempt to comply with the content provisions of § 2912b.[44]

## C. MCL 600.2912b(7) and Defective Responses to an NOI

Next, given that the Court of Appeals held that defendant Shabahang's response to plaintiff's NOI was defective because it did not meet the requirements of MCL 600.2912b(7), the question arises whether plaintiff was required to wait the full 182-day period before filing his medical malpractice action, or whether he could avail himself of the shortened 154-day period. Our analysis again begins by examining the text of MCL 600.2912b(7).[45] The statute is clear that a defendant must provide the plaintiff with a written response within 154 days of receipt of the NOI. This provision is mandatory. The response must include a statement of the factual basis for the defense, the standard of care that the health professional claims applies, the manner in which it is claimed that the health professional complied with the standard of care, and the manner in which the health professional contends that the alleged negligence was not the proximate cause of the plaintiff's injuries. If the plaintiff does not receive the written response

---

[44] Section 2301 provides that any amendment shall be made "on such terms as are just." We note that in light of this provision, justice would be served by having any amendment relate back to the time that the original NOI was mailed in accord with the treatment afforded to pleadings when amended under MCR 2.118(D).

[45] See part III(B) of this opinion for the full text.

required under MCL 600.2912b(7) within the 154-day waiting period, the plaintiff may file suit after the 154-day waiting period has expired.[46]

According to the Court of Appeals, Shabahang's response was defective and did not comply with the statute. Despite this response, Shabahang argues that plaintiff was still required to wait the full 182-day waiting period before filing suit because plaintiff received a response to the NOI. Plaintiff, on the other hand, argues that because the notice did not meet the requirements of § 2912b(7), it was proper to commence his suit upon the expiration of the 154-day period, as allowed under MCL 600.2912b(8). Shabahang counters that plaintiff could not unilaterally determine that the response was inadequate, contending that a judge must adjudicate the issue before plaintiff may file the complaint early.

Once again we turn to the standards set forth in § 2301 for guidance. Section 2301 similarly allows for "amendment" or "disregard" of defects in responses to NOIs, as long as the cure is in the furtherance of justice and does not affect the substantial rights of the parties. Significantly, defendants must make a good-faith attempt to comply with the content requirements of the statute to avail themselves of § 2301.

---

[46] MCL 600.2912b(8) provides: "If the claimant does not receive the written response required under subsection (7) within the required 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period."

We note that our holding today does not conflict with *Omelenchuk v City of Warren*, 461 Mich 567, 575; 609 NW2d 177 (2000) (holding that the statute of limitations remains tolled for the full 182 days even if the plaintiff takes advantage of the shortened waiting period).

Shabahang's one-page response to the NOI was utterly lacking in a good-faith attempt to comply. The entire substantive portion of Shabahang's response stated:

### 1. Factual Basis for Defense to Claim

The medical records involved in this case, together with deposition testimony, will form the primary defense to this case. Briefly, Dr. Shabahang contends that he properly evaluated, assessed and treated Gary Bush. The actions of Dr. Shabahang were well within the standard of care.

### 2. Standard of Care and Compliance

The standard of care required Dr. Shabahang to do things demonstrated in the medical records, which may be further augmented by deposition testimony. At all times, he acted within the standards of care in his care and treatment of Gary Bush.

### 3. Manner of Compliance

See § 2 above. The manner in which Dr. Shabahang complied with the applicable standard of care is outlined in the medical records, and will be further augmented by sworn deposition testimony.

### 4. Proximate Cause

It is the position of Dr. Shabahang that his actions did not within a reasonable degree of medical probability contribute in any way to the complications alleged by Gary Bush. Additionally, it is the position of Dr. Shabahang that the current medical condition of Gary Bush was not in any way caused or contributed by the activities of Dr. Shabahang.

Shabahang was required to make a general statement of the factors contained in § 2912b(7). He failed to do so. Shabahang's response is nothing more than a blanket denial of any wrongdoing. Indeed, Shabahang himself does not defend his efforts or the content of the response in his arguments to this Court.

27

Rather, defendant takes the position that the content of the response is irrelevant. We disagree. The purpose of the NOI waiting period is to provide a cost-saving method to resolve meritorious claims. If a defendant does not wish to use that process, the plaintiff is entitled to accelerate the filing of the complaint. A defendant can either advise the plaintiff of the decision to waive[47] or the defendant may do nothing at all, either of which triggers the shortened waiting period. However, we cannot allow a defendant to so flagrantly disregard the process and fail to make a good-faith attempt to comply, yet still take advantage of the full waiting period. As Shabahang did not make a good-faith attempt to comply with § 2912b(7), he cannot avail himself of either § 2301 or the full 182-day waiting period.

This result is fully consistent with the statutory NOI scheme. It makes little sense to continue a settlement period when one party has indicated that he or she has no interest in settlement. When a defendant has made little or no attempt to comply with the statute, we will not afford the same benefits as if he or she had made an attempt to comply.

Finally, defendant asserts that plaintiff does not have the right to unilaterally make a determination on the validity of a response. We agree with the Court of Appeals that a plaintiff who unilaterally makes such a decision does so at his or her own peril. If a court ultimately determines that the response is not

_____

[47] See MCL 600.2912b(9).

28

defective, plaintiff's complaint may be deemed untimely. However, given the limited time period involved, it would be virtually impossible for a Court to adjudicate this issue on a timely basis. By the time the parties could schedule a hearing and brief the issue, the shortened time period afforded by § 2912b would be lost. Therefore, we agree with the Court of Appeals that a plaintiff may choose to make his own determination regarding the sufficiency of a response, but he does so at the risk of having a court later determine that the defendant's response was indeed adequate. We conclude that § 2912b(7) allows a plaintiff to file a complaint early if the defendant's response to the NOI is defective.

## IV. CONCLUSION

We hold that pursuant to MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004, when an NOI is timely, the statute of limitations is tolled despite defects contained therein. Moreover, in light of the legislative clarification of § 5856(c), we hold that the purpose of the NOI statute is better served by allowing for defects in NOIs to be addressed in light of § 2301, which permits "amendment" or "disregard" of "any error or defect" where the substantial rights of the parties are not affected, as long as the cure is in the furtherance of justice and on terms that are just. A cure is in the furtherance of justice when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Finally, we hold that a plaintiff may take advantage of the 154-day waiting period

29

provided in § 2912b(8) where a defendant fails to make a good-faith attempt to reply to the plaintiff's NOI in compliance with the statutory content requirements.

We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

Diane M. Hathaway
Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

GARY L. BUSH, SR., as Guardian of
GARY E. BUSH, a protected person,

      Plaintiff-Appellee,

v                                         No. 136617


BEHROOZ-BRUCE SHABAHANG, M.D.,
GEORGE T. SUGIYAMA, M.D.,
M. ASHARAF MANSOUR, M.D.,
VASCULAR ASSOCIATES, P.C., and
SPECTRUM HEALTH BUTTERWORTH
CAMPUS,

        Defendants,

and

JOHN CHARLES HEISER, M.D., and
WEST MICHIGAN CARDIOVASCULAR
SURGEONS,

      Defendants-Appellants.
_____

GARY L. BUSH, SR., as Guardian of
GARY E. BUSH, a protected person,

      Plaintiff-Appellee,

v                                         No. 136653

BEHROOZ-BRUCE SHABAHANG, M.D.,

        Defendant-Appellant,

and

JOHN CHARLES HEISER, M.D.,
WEST MICHIGAN CARDIOVASCULAR
SURGEONS,
GEORGE T. SUGIYAMA, M.D., M.
ASHRAF MANSOUR, M.D., VASCULAR
ASSOCIATES, P.C., and SPECTRUM
HEALTH BUTTERWORTH CAMPUS,

        Defendants.

_____

GARY L. BUSH, SR., as Guardian of
GARY EDWARD BUSH, a protected
person,

        Plaintiff-Appellee,

v                              No. 136983

BEHROOZ-BRUCE SHABAHANG, M.D.,
JOHN CHARLES HEISER, M.D.,
WEST MICHIGAN CARDIOVASCULAR
SURGEONS, GEORGE T. SUGIYAMA,
M.D., M. ASHRAF MANSOUR, M.D., and
VASCULAR ASSOCIATES, P.C.,

        Defendants,

and

SPECTRUM HEALTH BUTTERWORTH
CAMPUS,

        Defendant-Appellant.

_____

MARKMAN, J. (*dissenting*).

Because I disagree with the majority's interpretation of the notice-tolling

provision in MCL 600.5856, as well as with its interpretation of MCL 600.2912b

2

regarding a defendant's permissible response to a plaintiff's notice of intent to sue, I respectfully dissent.

## I. FACTS AND HISTORY

Plaintiff underwent surgery on August 7, 2003, for an aortic aneurysm and a heart valve replacement. Plaintiff alleges that during the surgery defendant Behrooz-Bruce Shabahang, M.D., "cut into the aortic aneurysm causing a laceration" and defendant John Charles Heiser, M.D., "improperly clamped [a] vessel causing vascular damage." Defendants George T. Sugiyama, M.D., and M. Ashraf Mansour, M.D., "were called in to repair the vein and artery." Plaintiff alleges that the injuries caused by the surgery have caused him to become "unable to live without supervision and assistance."

On August 5, 2005, two days before the two-year period of limitations expired, plaintiff served defendants, including Spectrum Health Butterworth Campus (the facility where the surgery took place), West Michigan Cardiovascular Surgeons (the entity to which Shabahang and Heiser belonged), and Vascular Associates, P.C. (the entity to which Sugiyama and Mansour belonged), with notices of intent to file suit. Shabahang responded to plaintiff's notice, as did Sugiyama, Mansour, and Vascular Associates, but Heiser, Spectrum Health, and West Michigan Cardiovascular did not. On January 27, 2006, 175 days after serving notice, plaintiff filed his complaint against all defendants.

The trial court granted summary disposition in favor of Sugiyama, Mansour, and Vascular Associates because plaintiff's notice did not include a

3

standard of care for Sugiyama and Mansour.[1] For that same reason, the trial court granted partial summary disposition in favor of Spectrum Health for its alleged liability based on Sugiyama's and Mansour's alleged malpractice.[2] The trial court, however, did not grant summary disposition in favor of Shabahang, who argued that the complaint was filed prematurely.

The Court of Appeals initially denied leave but, after remand by this Court, 477 Mich 934, 935 (2006), issued an opinion affirming in most respects the trial court's decision regarding the sufficiency of plaintiff's notice. *Bush v Shabahang*, 278 Mich App 703; 753 NW2d 271 (2008). The Court of Appeals, however, held that the notice was defective for the direct liability claims against defendants Spectrum Health and West Michigan Cardiovascular Surgeons, which were based on their alleged failure to properly hire and train staff. With respect to those claims, the Court remanded for dismissal without prejudice, concluding that the statute of limitations had been tolled by the defective notice and that the "applicable limitations periods remain tolled until entry of the grants of summary disposition." *Id.* at 727. With respect to the timing of plaintiff's complaint, the court held that plaintiff's complaint was timely filed, although Judge Fitzgerald would have held that plaintiff was required to wait 182 days after giving notice

---

[1] Plaintiff did not appeal this decision and thus it is not before the Court.

[2] The court also granted summary disposition in favor of Spectrum Health on the negligence claims based on Spectrum Health's physician assistants because plaintiff failed to file a conforming affidavit of merit with those claims.

before commencing the suit. *Id.* at 727-729 (Fitzgerald, P.J., concurring in part and dissenting in part).

This Court consolidated these cases and initially heard oral argument on defendants' applications for leave to appeal regarding: (1) whether the Court of Appeals remand for dismissal without prejudice was inconsistent with *Boodt v Borgess Med Ctr*, 481 Mich 558; 751 NW2d 44 (2008); and (2) whether plaintiff's complaint was filed prematurely. 482 Mich 1014 (2008). During oral arguments, a question arose regarding the 2004 amendment of the tolling statute, MCL 600.5856. Accordingly, we granted leave to hear full oral argument as follows:

> (1) whether the plaintiff's defective notice of intent as to defendants West Michigan Cardiovascular Surgeons and Spectrum Health tolled the period of limitations pursuant to MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004; and (2) whether defendant Shabahang's defective response to the plaintiff's notice of intent, MCL 600.2912b(7), was presumed valid such that the plaintiff was required to wait the full 182-day period before filing his medical malpractice action. [482 Mich 1105 (2008).]

## II. STANDARD OF REVIEW

This Court reviews questions regarding summary disposition "de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review questions of statutory interpretation de novo. *Miller v Mercy Mem Hosp*, 466 Mich 196, 201; 644 NW2d 730 (2002).

5

## III. TOLLING STATUTE

### A. Analysis

A claim for medical malpractice must be brought within two years from the time the alleged malpractice takes place.[3] *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 219; 561 NW2d 843 (1997). A claimant, however, can toll this limitations period by complying with MCL 600.5856.[4] Specifically, § 5856(c) allows tolling during the interlude to commencing a medical malpractice action required by § 2912b if the statute of limitations would otherwise expire during that period.[5] Absent tolling, however, an action commenced after two years is "barred." MCL 600.5838a(2). Accordingly, for plaintiff's claims to survive summary disposition, the statute of limitations must have been tolled, because plaintiff filed his complaint more than two years and five months from the date of the alleged malpractice.

---

[3] The statute of limitations for medical malpractice claims provides that a person "shall not bring or maintain an action to recover damages for injuries to persons or property unless . . . the action is commenced within [2 years]." MCL 600.5805(1), (6).

[4] Tolling extends the time during which a claim can be brought by temporarily suspending the statute of limitations.

[5] MCL 600.2912b(1) states:

> Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

MCL 600.5856(c) provides:

> The statutes of limitations or repose are tolled in any of the following circumstances:
>
> ***
>
> (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.[6]

Previously this provision read:

> The statutes of limitations or repose are tolled:
>
> ***
>
> (d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b. [MCL 600.5856(d).][7]

In *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 64-66; 642 NW2d 663 (2002) (*Roberts I*), this Court held that in order to toll pursuant to the pre-amendment provision, plaintiff's notice must comply with MCL 600.2912b(4).[8] The instant

_____

[6] Generally, this is known as the notice-tolling provision.

[7] 2004 PA 87 amended MCL 600.5856. The amendment deleted previous subsection (c).

[8] Subsection (4) states:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

7

question is whether under the post-amendment provision, the notice must also comply with § 2912b(4). The majority holds that under the amended notice-tolling provision a defective notice, i.e., one that does not satisfy § 2912b(4), will nonetheless toll the statute of limitations. I do not agree and believe instead that the notice-tolling provision still requires a notice that is compliant with § 2912b(4) in order to effectively toll.

The Court's obligation in interpreting a statute is to "give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). "[L]anguage does not stand alone, and thus it cannot be read in a vacuum. Instead, 'it exists and must be read in context with the entire act . . . .'" *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). "Statutes that address the same

---

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

subject or share a common purpose are *in pari materia* and must be read together as a whole" to fully reveal the Legislature's intent. *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007); see also *Turnbull v Prentiss Lumber Co*, 55 Mich 387, 394; 21 NW 375 (1884). The notice-tolling provision and the notice statute, § 2912b, are *in pari materia* because the notice-tolling provision was enacted with § 2912b, see 1993 PA 78, and directly references § 2912b. Accordingly, the notice-tolling provision must be interpreted in light of the overall statutory scheme within which it was placed.

The notice-tolling provision tolls "[a]t the time notice is given in compliance with the applicable notice period under section 2912b." The applicable notice period under § 2912b is 182 days from the filing of the notice during which a complaint may not be filed, MCL 600.2912b(1); *Omelenchuk v City of Warren*, 461 Mich 567, 573; 609 NW2d 177 (2000), and only begins once "the person has given the health professional or health facility written notice under this section." MCL 600.2912b(1). Notice is only considered "written notice under this section" if it complies with § 2912b(4), which states that "notice . . . under this section shall contain a statement" regarding substantive aspects of the alleged malpractice. See *Boodt*, 481 Mich at 562-563 ("[A] plaintiff cannot commence an action before he or she files a notice of intent that contains all the information required under § 2912b(4)."). For the notice to be given in compliance with the "applicable notice period," that period necessarily must exist. Because giving notice as required by § 2912b(4) constitutes the only manner by

9

which the applicable notice period is brought into existence, it seems logical to conclude that the Legislature intended the notice-tolling provision to be triggered only by the plaintiff filing such notice.

Furthermore, allowing the notice-tolling provision to be triggered by a *defective* notice makes little sense considering that the provision only applies "if during [the applicable notice period] a claim would be barred by the statute of limitations." MCL 600.5856(c). One cannot fairly say that a claim would be barred "during" the notice period when the notice period has not begun due to the plaintiff's failure to file a sufficient notice. Further, the tolling period is equal to the "number of days remaining in the applicable notice period after the date notice is given." MCL 600.5856(c). Because a defective notice does not create an applicable notice period under § 2912b(1), the number of days remaining in that period cannot be determined. Thus, if a defective notice is allowed to toll, the notice-tolling provision would provide no guidance for determining the tolling period. The only manner by which the notice-tolling provision can be given meaningful effect is to interpret it as requiring the notice specifically contemplated in § 2912b(4), which creates the applicable notice period to which the tolling provision repeatedly refers. Accordingly, contrary to the majority, I believe that a defective notice cannot toll the statute of limitations under § 5856(c).

Here, plaintiff's notice was defective because it did not contain any statement regarding the standard of care for claims alleging direct liability against West Michigan Cardiovascular and Spectrum Health. Plaintiff's failure to include

10

any statement regarding the standard of care for Sugiyama's and Mansour's alleged malpractice also makes the notice defective for vicarious liability claims against Spectrum Health based upon their malpractice. Because plaintiff's notice was defective in this regard, the statute of limitations for those claims was not tolled by § 5856(c). Moreover, because the statute of limitations was not tolled, and because plaintiff's complaint was filed more than two years after the alleged malpractice, these claims are time-barred and should be dismissed with prejudice.

## B. Response to the Majority

The majority's interpretation is at odds with its own assertion that "[t]he statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme." *Ante* at 10. By focusing only on the amended language in the notice-tolling provision's first clause, the majority disregards the implications of the remaining portion of the provision. *Ante* at 12-14. Such an analysis is incomplete in light of the direct correlation that the remaining portion of the provision has with § 2912b and its notice period. Although the legislative amendment may only have altered parts of § 5856(c), the *whole* scheme nonetheless must be considered in order to determine the Legislature's intent. The numerous references to the notice period in § 5856(c) necessarily mean that the period established by § 2912b(1) must have *come into being in the first place* for those references to be given any effect, and this can only take place when notice that complies with § 2912b(4) has been supplied. The majority, however, interprets the notice-tolling provision in a manner that bears no logical relationship

11

with the statute that requires that notice be given in the first place.  Thus, rather than adopting an interpretation that "works in harmony with the entire statutory scheme," the majority instead adopts an interpretation that raises an insoluble tension between the tolling provision and the notice statute that will only be resolved by years of litigation, which perhaps is the whole point of the majority's exercise.

This tension arises most clearly in the form of MCL 600.2301, which the majority employs to sustain its conclusion that a defective notice can toll the statute of limitations, because a court can thereby "disregard any error or defect" in the notice.  MCL 600.2301 provides:

> The court in which any action or proceeding is *pending*, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein.  The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.  [Emphasis added.]

Without reference to any language from the tolling or notice statutes, the majority ascertains that a "good-faith attempt to comply with the content requirements of § 2912b" allows tolling under § 5856(c), *ante* at 22, because any defect "should be disregarded or cured by amendment." *Ante* at 24.

As this Court explained in *Boodt*, 481 Mich at 563 n 4, "§ 2301 only applies to pending actions."  As discussed above, § 2912b(1) provides that a person "shall not commence an action alleging medical malpractice against a

12

health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." Section 2912b(4) states that the "notice given to a health professional or health facility under this section shall contain a statement of at least all of the following . . . ." Therefore, "a plaintiff cannot commence an action before he or she files a notice of intent that contains all the information required under § 2912b(4)." *Boodt*, 481 Mich at 562-563. An action is not "pending" if it cannot be "commenced," and § 2912b(1) clearly prohibits a plaintiff from commencing an action before giving sufficient notice. I would not allow a plaintiff who is out of compliance with § 2912b, and thus not in compliance with the medical malpractice reforms enacted by our Legislature, to take advantage of the amendment provision. Accordingly, § 2301 is inapplicable, and a plaintiff cannot retroactively "amend" the notice of intent, and the courts cannot "disregard any error or defect" in the notice of intent.

Although I disagree in almost all respects with the majority's analysis regarding the amended notice-tolling provision, I note in particular the following difficulties with this analysis:

(1) The majority states that it "cannot assume that language chosen by the Legislature is inadvertent" or that a "change means nothing at all." *Ante* at 12-13. Why exactly is "interpret[ing] the amended statute in the same manner [as] . . . the pre-amended statute" something that this Court "cannot do"? *Ante* at 12. The beginning point for interpreting a statute must always be its language. *Wickens v*

13

*Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).  Even after an amendment, the statute must continue to control, because it constitutes the law of this state.  In light of the majority's position that any amendment must exact some change in meaning, what choice does the Legislature have if it wishes to make minor amendments to clarify a certain portion of a statute *consistent* with the Court's interpretation?  The majority's position is especially dubious when the Legislature, as it did here, makes minor changes to one part of a statute at the same time that it makes major changes to another part.[9]

> While in many and perhaps most instances it undoubtedly is the legislative intent, in enacting an amendment, to change existing law, there are, as undoubtedly, other instances, particularly if uncertainty exists as to the meaning of a statute, when amendments are adopted for the purpose of making plain what the legislative intent had been all along from the time of the statute's original enactment.  [*Detroit Edison Co v Janosz*, 350 Mich 606, 614; 87 NW2d 126 (1957).]

---

[9] The major change made to MCL 600.5856 was the amendment to the provision that begins tolling when a complaint is filed.  That provision now states that "[t]he statutes of limitation or repose are tolled . . . [a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules."  MCL 600.5856(a).  Previously, the statute of limitations was tolled "[a]t the time the complaint is filed and a copy of the summons and complaint are served on the defendant."  The amendment also completely deleted previous subsection (c), which allowed tolling when the complaint was filed and "placed in the hands of an officer for immediate service."  This reflects the Legislature's focus on returning complaint tolling to the way it previously operated, which *Gladych v New Family Homes, Inc*, 468 Mich 594; 664 NW2d 705 (2003), found inconsistent with the pre-amendment version of § 5856(a).

Indeed, it seems most reasonable that the Legislature's minimal changes to the notice-tolling provision were intended only to clarify the precise moment at which the statute of limitations would be tolled. The pre-amendment version, by stating that the "statutes of limitations or repose are tolled . . . [i]f, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose," MCL 600.5856(d), clearly described the circumstances by which the statute of limitations could be tolled, but was less clear regarding at what point in time the tolling actually began. Conversely, the other tolling provisions did not suffer from this same infirmity by stating that the "statutes of limitations or repose are tolled . . . [a]t the time" a specific action occurred. See pre-amendment MCL 600.5856(a) through (c). With this amendment, the Legislature changed the notice-tolling provision so that it too now states that the tolling starts "[a]t the time" the specified action occurs. In light of the identity to the other tolling provisions created by the amendment, I believe the amendment is best interpreted as effecting the same meaning that the identical language carries. Adding the phrase "[a]t the time" clearly denotes that the tolling begins upon the occurrence of the specified act. Interpreting the amendment as such clarification does not render it "inadvertent," *ante* at 12. Instead, this recognizes that the Legislature sought to enhance the clarity of the notice-tolling provision to the level of the other provisions and did so through a minor alteration.

(2) The majority creates a new standard for determining whether a notice complies with § 2912b(4) by stating: "A defendant who has enough medical

15

expertise to opine in his own defense certainly has the ability to understand the nature of the claims being asserted against him or her even in the presence of defects in the NOI." *Ante* at 22. This new subjective standard based on the defendant's "medical expertise" is not only divorced from the statute, but it is also inconsistent with the current standard set forth in *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 701; 684 NW2d 711 (2004) (*Roberts II*): "[T]he claimant is required to . . . provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings." (Emphasis in original.) The majority thereby clumsily disposes of a standard that required a plaintiff to comply with *all* the statutory requirements in favor of one that requires the plaintiff to follow the law only to the extent that the court believes a defendant's "medical expertise" can fill the gaps of the plaintiff's noncompliance, all without explaining even perfunctorily why the new standard is consistent with the law *actually* enacted by the Legislature, as opposed to the statute the majority *wishes* had been adopted.

(3) The majority's amendment process allows a plaintiff to commence his action 182 days after giving defective notice despite the fact that § 2912b(1) disallows a plaintiff from commencing suit unless he has given "written notice under this section." In other words, the majority has rewritten § 2912b(1) to enable a plaintiff to commence his suit 182 days after giving defective notice if it manifests the plaintiff's "good-faith attempt to comply with § 2912b(4)." *Ante* at 22. Cf. *Roberts I*, 466 Mich at 66 (holding that a "plaintiff must fulfill the

16

preconditions of § 2912b(4) in order to maintain a medical malpractice action").

By this revision, the majority rejects the Legislature's intention that notice "shall contain [specific] statement[s]" and substitutes its own goal of allowing plaintiffs to commence their actions despite obvious omissions that completely frustrate the purpose of the legislative notice procedure.[10] The majority never explains how the *tolling statute* amendment compels this rewriting of the *notice statute*, most likely because no valid explanation exists. The majority cannot cite anything in the amendment that altered the clear language in § 2912b(1), nor can it cite anything that indicates the Legislature intended that such language be ignored.

(4) The majority questions in dictum "whether *Roberts I* and *Boodt* were correctly decided" based on its interpretation of the amended notice-tolling provision, *ante* at 19 n 34, even after acknowledging that those cases "relied on language of a statute that is no longer in existence," *ante* at 9. The majority's disagreement with *Boodt* seems to be based largely on its misunderstanding of that decision. *Boodt* held that a plaintiff's complaint does not toll the statute of

---

[10] The majority provides no guidance regarding how lower courts should evaluate "good faith," beyond the dubious guidance afforded by its conclusion in this case that plaintiff's notice meets this threshold even though the majority agrees that plaintiff wholly omitted the statements required by § 2912b(4)(b)-(e) for direct liability claims against Spectrum Health and West Michigan Cardiovascular and those required by § 2912b(4)(b), (c), and (e) for vicarious liability claims against Spectrum Health. *Ante* at 22-24, citing 278 Mich App at 711, 716-717. The only real guidance that can be gleaned from this conclusion is that the Legislature's words are no longer much relevant to understanding the law of this state.

17

limitations pursuant to § 5856(a) after defective notice has been given, because §

2912b(1) disallows a plaintiff from commencing an action unless the plaintiff has

given "written notice under this section." *Boodt*, 481 Mich at 564. The majority,

however, interprets *Boodt* as holding that "no tolling was afforded in the presence

of a defect pursuant" to the notice-tolling provision, and thus "the plaintiff's action

was not commenced under § 2912b(1)." *Ante* at 14 n 26. Thus, notice-tolling was

never an issue in *Boodt*, yet the majority inexplicably finds that its interpretation

of the notice-tolling provision throws *Boodt* into question. As for *Roberts I*, the

majority never explains any possible errors in that decision other than to say that it

"opined," rather than "held," that "the focus of § 5856(d) was on compliance with

§ 2912b in its entirety." *Ante* at 12. The majority thus attempts to diminish the

validity of *Roberts I* by characterizing this decision as simply an expression of one

possible opinion among many, rather than actually analyzing the law in any

coherent manner to demonstrate why *Roberts I* may be incorrect.[11] Although the

majority makes clear that it disagrees with the results reached in *Roberts I* and

*Boodt*, it does not deign to explain why the law does not support those results.

---

[11] The Court's decision in *Roberts I* that the pre-amendment notice-tolling provision required notice compliant with § 2912b to toll was supported by all seven justices, including three currently in the majority who now question it. See *Roberts I*, 466 Mich at 67; *Roberts I*, 466 Mich at 72 (Kelly, J., dissenting) ( "[T]o begin the tolling of the MCL 600.5856(d) statute of limitations, a plaintiff must fully comply with the requirements of MCL 600.2912b.").

(5) By finding that § 2912b "is silent regarding the consequences of filing a defective NOI [and] makes no reference whatsoever to a mandatory dismissal penalty in the event of a defect," the majority raises an irrelevant issue concerning "whether a mandatory dismissal with prejudice under § 2912b was the intent of the Legislature." *Ante* at 16. However, this Court has never held that a defective notice alone requires "mandatory dismissal with prejudice." By phrasing its inquiry as it does, the majority obviously misapprehends the procedure by which plaintiff's claims were dismissed.

First, the majority overlooks the interplay between the statute of limitations and the notice-tolling provision. The Legislature clearly created a two-year limitations period for medical malpractice actions, and then clearly stated that an action cannot be commenced after that period has expired. It also clearly created a tolling provision that allows the limitations period to be suspended if a claimant gives notice pursuant to § 2912b. If notice is not given, then tolling is not triggered. If tolling is not triggered and the statute of limitations expires, the latter operates in the same manner that it does in every other action: it bars claims from being commenced after its expiration.

Second, even if a defective notice does not toll the statute of limitations, this Court has never held that the defect requires "mandatory dismissal *with*

19

*prejudice*." *Ante* at 16 (emphasis added). [12] In fact, current caselaw supports the exact opposite proposition, namely that a plaintiff filing a defective notice can avoid dismissal with prejudice by simply correcting the notice so that it complies with § 2912b(4) before the statute of limitations has expired. In *Mayberry v Gen Orthopedics, PC*, 474 Mich 1, 3; 704 NW2d 69 (2005), this Court held that "a second notice of intent to sue, sent with fewer than 182 days remaining in the limitations period, can initiate tolling under § 5856(d) as long as the first notice of intent to sue did not initiate such tolling." Thus, under these circumstances, nothing would bar a claimant from filing a second notice to take advantage of the notice-tolling provision.

Here, rather than not tolling because there were more than 182 days remaining in the limitations period, plaintiff's notice, filed within the last 182 days of the limitations period, did not toll because it was *defective*. Although plaintiff only had two days in which to correct the defects, had he done so within that time, the statute of limitations would have been tolled and he could have timely commenced his action after the 182-day waiting period. Thus, any time a defective notice is filed, the plaintiff always has the opportunity to revise the

---

[12] This Court has held that "dismissal is an appropriate remedy for noncompliance with the notice provisions." *Burton v Reed City Hosp Corp*, 471 Mich 745, 753; 691 NW2d 424 (2005). Whether the dismissal is *with prejudice* depends on whether the plaintiff can "still comply with the applicable statute of limitations." *Id.*

notice to comply with § 2912b(4), at least until the expiration of the statute of limitations, and the defect alone does not mandate dismissal with prejudice.

(6) Without regard to the fact that a provision for "mandatory dismissal with prejudice" is unnecessary in § 2912b due to the dismissal necessitated by the statute of limitations, the majority proceeds with its misguided, and fruitless, search for direction from the Legislature that a defective notice requires "mandatory dismissal with prejudice." Unsurprisingly, the majority finds no such mandate, but rather concludes that the Legislature rejected a "mandatory dismissal" based on its interpretation of a provision of the initial notice legislation that the Legislature never adopted. *Ante* at 16-17.

Although "actions of the Legislature in considering various alternatives in language in statutory provisions before settling on the language actually enacted" may constitute a legitimate form of legislative history, *In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003), the majority's use of it here exemplifies well the shortcomings inherent in such approach. To reasonably discern legislative intent from rejected language, the rejected provision should be considered as a whole, rather than partially as the majority does by only looking at the first sentence of the provision. The full provision stated:

> Except as otherwise provided in this subsection, in an action alleging medical malpractice, the court shall dismiss a claim not included in the notice required under section 2912f. This subsection does not apply to a claim that results from previously unknown information gathered during discovery.

21

As an initial matter, this seems entirely unrelated to the statute of limitations under which dismissal is granted. The Legislature's rejection of an unrelated provision can hardly be used to alter the clear meaning of a statute. It seems far more reasonable to conclude that the Legislature rejected this provision in favor of § 2912b(3), which provides for similar treatment of the same subject matter: undiscovered claims.[13] Rather than considering *this* to be the Legislature's rationale for rejecting the initial provision, the majority concludes that it "can draw no conclusion from the omission . . . other than it was not the intent of the Legislature to incorporate a mandatory dismissal penalty into § 2912b." *Ante* at 17-18. Most other observers of this same legislative history would without much difficulty be able to draw an "other conclusion," and would almost certainly be far closer to reality than the majority. How can the majority draw an informed conclusion concerning legislative history from a provision *never* enacted without even considering a provision that *has* been enacted and actually substituted for the never-enacted provision?

(7) The majority concludes that "to hold that § 2912b in and of itself mandates dismissal with prejudice . . . would be inconsistent with" § 2912b's "stated purpose of . . . promoting settlement." *Ante* at 18. However, the majority

---

[13] Subsection (3) provides a shortened notice period for a claim not in the initial notice only if the plaintiff "did not identify, and could not reasonably have identified a health professional or health facility to which notice must be sent" before filing the complaint against the other parties.

does not explain how allowing a defective notice to substitute for the notice required by § 2912b(4) in any way "promot[es] settlement." *Ante* at 18. The likelihood of settlement almost certainly increases with the amount of information that the parties have regarding the subject of settlement. How can the majority's interpretation conceivably encourage settlement when it compels defendants to proceed on the basis of incomplete information?

## IV. WAITING PERIOD

The second major issue concerns how long a plaintiff must wait after giving notice before filing his complaint. The relevant statutory provisions state:

> (1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.
>
> ***
>
> (7) Within 154 days after receipt of notice under this section, the health professional or health facility against whom the claim is made shall furnish to the claimant or his or her authorized representative a written response that contains a statement of each of the following:
>
> (a) The factual basis for the defense to the claim.
>
> (b) The standard of practice or care that the health professional or health facility claims to be applicable to the action and that the health professional or health facility complied with that standard.
>
> (c) The manner in which it is claimed by the health professional or health facility that there was compliance with the applicable standard of practice or care.

23

(d) The manner in which the health professional or health facility contends that the alleged negligence of the health professional or health facility was not the proximate cause of the claimant's alleged injury or alleged damage.

(8) If the claimant does not receive the written response required under subsection (7) within the required 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period. [MCL 600.2912b.]

After receiving plaintiff's notice, Shabahang responded, but his response did not satisfy the requirements of § 2912b(7).[14] Plaintiff then commenced his action 175 days after giving notice. I agree with the majority that a plaintiff can make a tentative determination regarding the sufficiency of a defendant's response pursuant to § 2912b(7), and I also agree with the Court of Appeals that plaintiff did not need to challenge the sufficiency of Shabahang's response before filing his complaint pursuant to the shortened waiting period established by § 2912b(8).

A plaintiff can file his suit after 154 days if he "does not receive the written response required under subsection (7)" within 154 days after giving notice. MCL 600.2912b(8). Importantly, the response a plaintiff must receive is that "required under subsection (7)," which clearly states that the defendant "shall furnish" a response "that contains" specific statements. Thus, similar to the requirements for a plaintiff's notice, § 2912b(7) places the burden on the defendant to provide a written response that includes the requisite statements. See *Roberts II*, 470 Mich

---

[14] Shabahang's response clearly did not satisfy the substantive requirements of § 2912b(7), because it was completely unresponsive to those requirements. See *ante* at 27.

24

at 686; *Roberts I*, 466 Mich at 66. If the defendant does not provide those specific statements, then the response cannot be said to be the one required by § 2912b(7). Plaintiff, therefore, may file his complaint after 154 days, because he did not receive the proper response.

However, to require a plaintiff to wait for a judicial determination regarding the sufficiency of defendant's response would effectively nullify the requirements of § 2912b(7). That is, a defendant could give a response that failed to comply with § 2912b(7) and suffer no consequences, because the only possible statutory consequence, plaintiff's early filing, would be unavailable until the court determined that the defendant's response was defective, and by that time, the 28 days between the 154-day period and the 182-day period would almost certainly have elapsed. Accordingly, plaintiff here properly filed his complaint against Shabahang based on his own determination that he never received the response required by § 2912b(7).[15]

Rather than adopting this straightforward understanding of § 2912b(8), the majority feels the need to additionally read into the law an entirely concocted and gratuitous "good faith" standard in determining whether the defendant's response is sufficient. That is, rather than assessing the defendant's response, and comparing it to the requirements of the statute, a plaintiff must now consider

---

[15] A plaintiff makes such determination at his own peril. If a court later determines that the response was not defective, then the plaintiff's complaint is subject to dismissal because he did not wait the full 182 days.

whether defendant's response constituted a "good-faith attempt to comply with the content requirements of the statute." *Ante* at 26. In the place of a clear rule of law, the majority interposes an obscure and vague standard by which a plaintiff, who probably desires nothing more than to know what is statutorily required of each party, must now assess the mindset of the defendant. The majority, of course, supplies no guidance for how to satisfy its new standard, which poses a particular conundrum for plaintiffs, because, if a court determines that a response *was* made in "good faith," the majority holds that the trial court should allow defendant to amend his response. *Ante* at 26. This means that if the plaintiff relied on his *own* assessment that the response was defective, and filed before the 182-day period had expired, defendant's amendment could retrospectively make the complaint untimely. Doubtlessly, however, the majority will "correct" this problem in some later decision by a new word formula that is equally disregardful of the language of the statute. By contrast, I would simply hold that a plaintiff may avail himself of the 154-day filing option if the defendant's response does not comply with the requirements of § 2912b(7), without regard to whether the defendant has or has not made a "good faith" effort to comply with that provision.

## V. CONCLUSION

In summary, my concerns with the majority opinion are: (1) it ignores the great bulk of the language of the notice-tolling provision in interpreting that provision; (2) it ignores the larger statutory scheme within which the notice-tolling provision is located; (3) it creates a new "rule" whereby legislative amendments

26

must be interpreted to alter the meaning of the amended statute even if the statute's clear language suggests otherwise; (4) it creates a new standard for determining a notice's sufficiency that bears no relationship to the actual requirements set forth by the Legislature in § 2912b(4), in the process also giving no consideration to the standard set forth in *Roberts II*; (5) it gratuitously questions the validity of *Roberts I* and *Boodt* even though they interpreted a different version of the notice-tolling provision that has no bearing on the instant case; (6) it has interpreted an amendment of one statute to completely alter the meaning of another statute; (7) it allows proposed legislation that was never enacted to trump the meaning of legislation that was actually enacted; and (8) it reads words into a statute that are not there by concocting a "good faith" requirement in § 2912b(7).

I dissent and would hold that tolling can only be effected pursuant to § 5856(c) by a plaintiff's notice of intent that complies with the requirements of § 2912b(4). Accordingly, dismissal should be with prejudice with regard to West Michigan Cardiovascular and Spectrum Health, because plaintiff's notice did not toll the statute of limitations for those claims and his complaint was filed after the limitations period had expired. Further, I would hold that a plaintiff may commence an action 154 days after giving notice if the defendant's response does not comply with the requirements of § 2912b(7), rather than introducing a new

"good faith" requirement in assessing such response.  Because Shabahang's response did not comply with the requirements of § 2912b(7), plaintiff properly commenced his action 175 days after giving notice.

Stephen J. Markman
Maura D. Corrigan
Robert P. Young, Jr.